[Civ. No. 14459.   First Dist., Div. Two.   Dec. 14, 1950.]

R. G. REED et al., Respondents, v. THE PACIFIC IN-
DEMNITY COMPANY (a Corporation), Appellant.

Partridge & O'Connell and John P. Whitney for Appellant.

Nicholas Zoller for Respondents.

SCHOTTKY, J. pro tem.—Plaintiffs, doing business under the name of Reed Meat Packing Company commenced an action for declaratory relief against defendants Pacific Indemnity Company and The London and Lancashire Indemnity Company. Plaintiffs alleged that they were the owners of a Chevrolet truck involved in automobile accident on November 17, 1947, with resulting damage claims and suits against them for personal injuries and property damage. They also alleged that at the time of the accident each defendant was their insurer under a policy of liability insurance with applicable limits of liability in the same amounts. Plaintiffs alleged further that after the accident they reported same to each of the defendants and that after plaintiffs had been served with complaints and summons in said suits they requested each of said defendants to defend said actions on behalf of plaintiffs but that defendant Pacific Indemnity Company has refused to defend any of said suits. It was also alleged that the defendant London and Lancashire Indemnity Company of America was joined as a defendant as a necessary party and plaintiffs sought a declaration of their rights under the policies and a determination whether the said defendants are required to defend said suits and in the event an adverse judgment is rendered against plaintiffs in said suits what portion of said judgments either of said defendants is required to pay.

The findings of fact made by the court after a trial of several days were to the general effect that the allegations of the complaint were true and judgment was entered declaring substantially that each of the defendants was "a primary and concurrent insurer of said plaintiff"; that each was obligated to pay on behalf of plaintiffs one-half of any sums which plaintiffs shall become obligated to pay on account of the claims against them arising out of the accident, not exceeding one-half of the applicable limit of liability; and that each was obligated "to defend in name and on behalf of plaintiffs herein each and every suit against said plaintiffs arising out of said accident."

Defendant London and Lancashire Indemnity Company did not appeal, and this appeal is by defendant Pacific Indemnity Company from said judgment.

Appellant urges the following grounds for a reversal of the judgment:

1. The court erred in finding and declaring that the Pacific policy afforded pro rata insurance and not excess insurance.

2. The court erred in holding that the condition of the Pacific policy relating to notice and forwarding of process were not breached by respondents to the prejudice of Pacific.

3. Evidence of respondents' intent not to insure the Chevrolet truck with Pacific was relevant and was improperly excluded.

Before discussing these contentions we shall give a brief summary of the factual situation as shown by the record, resolving, as we must, all conflicts in favor of respondents.

Appellant is a corporation engaged in an insurance business. On June 10, 1947, it issued its "Comprehensive Liability Policy" for a period of one year from June 10, 1947, to June 10, 1948. It had issued a similar policy the previous year to respondents. In its policy, appellant agreed to pay on behalf of respondents all sums which respondents should become obligated to pay by reason of law for damages, because, first, of bodily injury sustained by any person or persons from any cause, and, second, of injury to property caused by accident and arising out of the use of an automobile, with bodily injury limits of $50,000, for one person, and $100,000, for more than one person, and a property damage limit of $5,000, for each accident.

At the issuance date of the policy, respondents were required to pay appellant a provisional deposit premium, and the policy provided for periodical audits, thereafter, by appellant to ascertain any increase in hazards, because of respondents' operations, which audits looked to an additional premium from respondents. At the termination of its policy, appellant was entitled to compute its earned premium and include in such computation all increases in hazards to which the policy applied in accordance with the company's rules, rates, rating plans, premium and minimum premium applicable to this insurance; and if such computation exceeded the estimated advance premium paid because of an increase in a hazard during the policy period, respondents were required to immediately pay the excess to appellant; and if less, appellant was required to return to respondents the unearned portion of the deposit premium. One of the hazards covered by this policy and included in the rates used in determining such deposit premium was the coverage of automobiles.

This policy required respondents to maintain for each hazard, records of the information necessary for premium computation, and at any time during the policy period, and within one year after the final termination of its policy, appellant was entitled to examine respondents' hazard records for the computation of its earned premium. This policy did not contain any provision that required respondents to notify appellant of a hazard change, but respondents were required to maintain hazard records for appellant's audits.

On October 31, 1946, respondents purchased a Chevrolet truck which purchase was properly entered in respondents' records for the automobile hazard.

On November 8, 1946, at the request of Tate & Corvi, insurance brokers, the London and Lancashire Indemnity Company of America (hereinafter called London), issued its automobile liability policy to respondents, whereby it insured such truck and agreed to pay on behalf of respondents all sums which respondents should become legally obligated to pay by reason of the liability imposed upon respondents by law, for damages because of the same bodily injuries and property damage described in appellant's policy, but caused by accident and arising out of the use of such truck, with bodily injury limits of $50,000 for one person and $100,000, for each accident and a property damage limit of $5,000.

Appellant's comprehensive liability policy and London's auto liability policy each contained "Other Insurance" provisions, which provisions were, to the following extent, identical:

"If the Insured has other insurance on a loss covered by this policy, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; . . ."

However the "Other Insurance" provision of appellant's policy, condition 13 thereof, further stated: "provided, however, that the insurance under this policy shall be excess insurance with respect . . . (2) to loss against which the named insured has other insurance disclosed to the company as in effect on the effective date of this policy and upon the basis of which the premium for the insurance under this policy is modified but in such event the insurance under this policy shall apply only in the amount of which the appli-

cable limit of liability stated in the declaration exceeds the applicable limit of liability of such other insurance."

Without inspecting or auditing respondents' hazard records, appellant issued its comprehensive liability policy to respondents for the period from June 10, 1947, to June 10, 1948, upon the same terms and conditions as its former policy and for which respondents paid a deposit premium.

Subsequently, London issued its renewal certificate renewing its automobile liability policy for the period from November 8, 1947, to November 8, 1948, for such truck.

On November 10, 1947, in the city of Oakland, while being driven by an employee in the course of respondents' business, such truck was involved in an accident in which bodily injuries are alleged to have been sustained by ten (10) people, which have resulted in seven (7) actions at law against respondents, for such personal injuries, and property damage to six (6) motor vehicles, one (1) electric pole and one (1) building, which have resulted in five (5) actions at law against respondents for such property damage.

Immediately following the accident, Tate & Corvi orally notified insurance investigators Brown Brothers, of such accident and Brown Brothers received authority from London to investigate such accident on respondents' behalf.

Brown Brothers assigned its investigator, John Rose, to investigate such accident. On the day of the accident, Rose interviewed the driver of respondents' truck and obtained a written statement from him of his version of the accident. Thereafter, Rose made a complete and full investigation of the accident, obtaining names of witnesses, signed statements of witnesses, photographs, and description of injuries, which he delivered to London in a written report.

On November 21, 1947, at the request of respondents, Rose first telephoned appellant's Oakland office and informed a Miss Arth of the accident and respondents' policy with appellant, and gave her the names of the parties, the date, time and place of the accident, and, second, on the same day, in confirmation of such telephone conversation, Rose wrote a letter to appellant's Oakland office, Attention: Miss Arth, setting out the names of respondents, their comprehensive policy number and the time and place of the accident.

Upon receipt of such letter on November 22, 1947, Cameron MacAulay, who was in charge of appellant's Oakland office, as supervisor of its claims department, in Alameda County,

telephoned Rose acknowledging receipt of such letter, and Rose repeated the same information he had given Miss Arth, and informed MacAulay that he had given his full report to London, and MacAulay should contact London for any more details.

Following receipt of the letter of November 21, 1947, and his telephone· call to Rose, MacAulay decided the accident was not properly reported and that appellant was not interested in the loss and, therefore, instructed no one to institute any investigation.

Thereafter, periodic telephone conversations were held between B. C. Derry, claims superintendent for London, Daryl Jenkinson, assistant claims superintendent for London, and MacAulay, as to whether either appellant or London were primary or excess insurers of respondents and what contributions would be made by appellant and London in the investigation, defense or settlement of the claims arising out of the accident.

Seven actions were commenced against respondents for personal injury, and five for property damage, for sums totalling in excess of $200,000. In each of such actions, the complaint alleged that the proximate cause of the accident was the negligent and careless operation of such truck by respondents' driver. In May, 1948, MacAulay learned of the various parties in these actions and the prayer of their complaints.

In August, 1948, appellant examined London's complete file of the investigation of the accident which contained the respondents' driver's signed statement, signed witness statements, medical examination of claimants, relevant photographs and copies of summons and complaints in each of said actions filed against respondents.

At all times since it learned of this accident, appellant has refused to investigate, defend or participate in the settlement of any of the claims made against respondents. Each of said claims is still pending and no settlement has been made with any claimant.

On September 17, 1948, respondents commenced their action in declaratory relief against appellant and London to ascertain their coverage under each insurance policy.

On November 30, 1948, appellant inspected and audited respondents' books to determine its earned premium for the year June 10, 1947 to June 10, 1948. Thereafter, appellant computed its earned premium and charged respondents an

additional premium of $101.63 of which $54.96 represented a premium charge for such truck.

On December 15, 1948, appellant mailed respondents a statement in writing which showed respondents indebted to appellant for such sum of $101.63 for such additional earned premium. On February 15, 1949, respondents paid appellant such balance of $101.63. On March 2, 1949, appellant tendered to respondents the sum of $54.96 as a modification of its earned premium based on London's auto policy covering such truck, and respondents refused to accept such tender.

We shall first discuss appellant's contention that the court erred in declaring that its policy afforded pro rata insurance instead of excess insurance.

Appellant states that if said condition 13 had ended where the semicolon divided it there could be no sound challenge to the declaration by the court that the Pacific policy afforded pro rata insurance and not excess insurance. But, argues appellant, "if, according to the plain meaning of the proviso, the insured had other insurance against a loss which Pacific insured against, and if it was disclosed that such other insurance was in effect on the effective date of the Pacific policy, and if the premium for the Pacific policy was modified upon the basis of such other insurance, then the Pacific policy afforded excess insurance and not pro rata insurance." Appellant contends that all of the foregoing conditions are present in the instant case.

As was said in *Pendell* v. *Westland Life Ins. Co.*, 95 Cal. App.2d 766 at page 769 [214 P.2d 392]:

"A contract of insurance, like any other contract, is to be construed so as to give effect to the intention of the parties at the time of contracting so far as it is ascertainable. (Civ. Code, § 1636.) Where the language is susceptible of two constructions, it should be construed most strongly in favor of the insured. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 P. 42, 26 A.L.R. 123]; *Island* v. *Fireman's Fund Indemnity Co.*, 30 Cal.2d 541, 548 [148 P.2d 153, 173 A.L.R. 896].) A contract of insurance must be given such construction, if fairly warranted, as will best carry out the object for which the contract was entered into, namely, that of securing indemnity to the insured for the losses to which the insurance relates. (*Fageol T. & C. Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 748, 751 [117 P.2d 669].) Indemnification of the insured should be effected rather than defeated

'To that end the law makes every rational intendment in order to give full protection to the interests of the insured.' (*Glickman* v. *New York Life Ins. Co.*, 16 Cal.2d 626, 635 [107 P.2d 252, 131 A.L.R. 1292].)

"Exceptions in a contract of insurance which purport to limit the risk assumed by the insurer in the general provisions thereof are to be construed most strongly against the insurer and in favor of the insured and if susceptible of two meanings, the one most favorable to the insured is to be adopted. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 424 [213 P. 42, 26 A.L.R. 123] ; *Bayley* v. *Employers' etc. Corp.*, 125 Cal. 345, 352 [58 P. 7].) The insurer is bound to use such language as to make the exceptions and provisions of the contract clear to the ordinary mind; and in case it fails to do so, any uncertainty or reasonable doubt is to be resolved against it. (*Pacific etc. Co.* v. *Williamsburg etc. Co.*, 158 Cal. 367, 370 [111 P. 4].)"

We are unable to agree with appellant that all of the provisions of said proviso were present. It is conceded by appellant that it did not learn of the London policy until after the accident of November 10, 1947. The record shows that on November 30, 1948, appellant audited respondents' records, and thereupon charged respondents an additional premium for said Chevrolet truck, which premium was paid by respondents, although several weeks later appellant tendered back to respondents the premium covering said truck which refund respondents refused to accept. The language of said proviso must be considered as a whole, and must be given a reasonable construction that "will best carry out the object for which the contract was entered into, namely that of securing indemnity to the insured for the losses to which the insurance relates."

We believe that a reasonable construction of said proviso is that unless and until the premium for the comprehensive policy is modified on the basis of the other insurance, the coverage under the comprehensive policy remains pro rata insurance. There is no provision in appellant's policy which required respondents to notify appellant of the issuance of the London policy, but respondents had a right to secure a separate and additional policy when they purchased the Chevrolet truck and there was no reason for them to notify appellant unless they wished to have the premium modified. If appellant had exercised its right to audit respondents' books and had learned of the London policy and had, prior to the

accident, modified the premiums on the basis of said policy, it could then be held that under said proviso of condition 13 of its policy the coverage of the Chevrolet truck was excess insurance.

We are convinced that the trial court correctly concluded that the coverage afforded respondents by appellant's policy was pro rata insurance.

Appellant next contends that the trial court erred in holding that the conditions of the appellant's policy were not breached by respondents to the prejudice of appellant.

The trial court found that: ''On or about November 20, 1947, and as soon as practicable after such accident, written notice was given on behalf of plaintiffs to each of said defendants of such accident. And that defendant Pacific Indemnity Company suffered no prejudice because said notice did give all the information specified in condition No. 9 of its said policy, that defendant Pacific Indemnity Company immediately thereafter refused to investigate or defend on behalf of plaintiffs herein such accident on the grounds that defendant Pacific Indemnity Company was not liable under its policy, and (b) Thereafter each of said actions was commended against plaintiffs herein and plaintiffs herein caused notice of each thereof to be given to defendant Pacific Indemnity Company, and (c) that plaintiffs herein have been served with summons and complaints in each of such suits, and (d) that such summons and complaints were delivered to London & Lancashire Indemnity Company, and (e) that knowledge of such suits was brought to the attention of Pacific Indemnity Company, but defendant Pacific Indemnity Company has refused to defend any of said suits and would have refused to defend or investigate each of such lawsuits had plaintiffs herein forwarded such copies of the complaints and summons to it.''

It appears to be settled law in California that whether an insured has complied with the ''Notice to Company'' or ''Assistance & Cooperation'' provisions of his policy is a question of fact, and that before the breach of such provisions precludes a recovery under the policy by the insured, it must appear that the insurer has suffered prejudice. In the recent case of *Gibson* v. *Colonial Ins. Co.*, 92 Cal.App.2d 33 [206 P.2d 387], in which a hearing was denied by the Supreme Court, the court held that, ''Where a policy of liability insurance provides that as a condition precedent to the insurer's

obligation the insured shall notify it of any accident covered by such policy 'immediately' or 'as soon as practicable,' the notice required is only such as is prompt and reasonable under the circumstances, and the question whether the insurer's obligation is excused by delay in such notice depends on whether the insurer has been substantially prejudiced by such delay, which in turn depends on the facts of the particular case, and prejudice will not be presumed as a matter of law from a delay of seven and one-half months.'' The court said, at page 34:

''The legal principles which must govern our decision were stated in *Abrams* v. *American Fidelity & Cas. Co.*, 32 Cal.2d 233 [195 P.2d 797]. In that case, as in the present one, an injured plaintiff was seeking to enforce the contract liability of the insurer after his judgment against the insured went unsatisfied. The policy required the insured to give 'immediate written notice' of any accident covered by the policy. Upon the assumption that 'immediate' notice meant notice within a reasonable time, the Supreme Court held (p. 237) that 'the delay of forty-one days which occurred here was not so great that the trial court was precluded from finding as a fact, as the court did, that defendant was not prejudiced thereby; i. e., the court was not required to conclude as a matter of law that prejudice resulted.' The defendant in that case placed reliance upon several cases including *Purefoy* v. *Pacific Automobile Indem. Exch.*, 5 Cal. 2d 81 [53 P.2d 155], in which substantial and unexplained delays in giving notice of accident were held to give rise to a presumption of prejudice. In distinguishing these cases, which are also relied upon by appellant here, the court expressly refuted the proposition 'that such a presumption or inference is a conclusive one which cannot be overcome by evidence that no actual prejudice occurred,' and laid down the rule that '[t]he ultimate conclusion in each case must depend on its own facts.' The evidence in the Abrams case was held sufficient to support a finding that the delay in giving notice did not prejudice the insurer in defending the action against the insured, and a judgment for plaintiff was affirmed.

''Defendant contends that the Abrams decision is not controlling here, and that the issue of prejudice should not have been left to the jury. Its argument is that irrespective of any question of prejudice, the insured's delay of seven and one-half months in giving notice bars recovery, since

as a matter of law, such a delay constituted a direct and substantial breach of the condition precedent that notice be given 'as soon as practicable.' The record, so defendant maintains, shows without contradiction that Columbia's officers were informed of the accident upon the day it occurred, but contains nothing by way of explanation to excuse or justify the lengthy delay in notifying defendant thereof. Conceding these facts, we nevertheless are of the opinion that defendant's contention cannot be sustained. The statement in *Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743, 752 [7 P.2d 999, 85 A.L.R. 13], that 'the violation of the conditions by the assured cannot be a valid defense against the injured party unless in the particular case it appears that the insurance company was substantially prejudiced thereby,' has been regarded as a controlling principle in numerous actions where breach of a cooperation clause or notice provision has been asserted as a defense. It has never been overruled, although, upon occasion, it may have been overlooked (*cf., Coolidge* v. *Standard Acc. Ins. Co.*, 114 Cal.App. 716, 722 [300 P. 885]), and in the Purefoy case, *supra,* the Supreme Court suggested that the soundness of the statement might be open for reexamination in a proper case. The subsequent decision in the Abrams case, however, must be regarded as approving the rule stated in the Hynding case.''

We have hereinbefore set forth the nature and extent of notice received by appellant insurance company. It is apparent that appellant was notified of the happening of the accident and the details thereof and also of the filing of the suits, all within a reasonable time, but that appellant chose to rely upon its claim that it was not liable under its policy and refused either to investigate or defend on behalf of respondents.

We are convinced that both the evidence and the law support the finding of the trial court that the conditions of appellant's policy were not breached by respondents to the prejudice of appellant.

The final contention of appellant is that the court improperly excluded evidence of respondents' intent not to insure the Chevrolet truck with appellant company.

Appellant states that ''there was ample evidence to support an inference that the respondents intended to have the Chevrolet truck insured against liability specifically and exclusively

with London." It points to evidence that neither the acquisition of the Chevrolet nor the existence of the London policy was disclosed to appellant or uncovered by audit until after the truck was involved in the accident of November 10, 1947; that when the truck was involved in an accident on June 27, 1947, respondents reported it to London and London paid a property damage claim; and that respondents first reported the accident here involved to London and also forwarded the summons and complaints received to London.

Appellant then points out that at the trial, it asked the following questions directed to respondent Robert G. Reed:

"Q. Was it your intention, when you ordered this insurance from Mr. Corvi, to order two policies?"

"Q. Was it your purpose, Mr. Reed, to pay two premiums, one to Pacific Indemnity, and the other to London & Lancashire for the same coverage?"

"Q. Was it your purpose, Mr. Reed, to pay two premiums for liability and property damage coverage on this one Chevrolet automobile?"

Respondents' counsel objected to each of said questions upon the grounds that they were irrelevant and that the policies speak for themselves. The court sustained the objections, stating: ". . . it seems to me that when he bought and paid for the insurance, that is what he did, and that is the end of it. Now, what his purpose was, because it also involves a question what is the policy? I do not think is material."

We believe that the ruling was proper, but, in any event, in view of the record in the case, we do not see how appellant could have been prejudiced by the ruling.

In view of the foregoing we believe that the judgment should be and same is hereby affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 13, 1951, and appellant's petition for a hearing by the Supreme Court was denied February 8, 1951.