[Civ. No. 25116. Second Dist., Div. Three. Dec. 1, 1961.]

NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY, Plaintiff and Respondent, v. DANIEL BROWN, Defendant and Appellant.

606

Marvin Zinman and Gruber and Hartman for Defendant and Appellant.

Parker, Stanbury, Reese & McGee and Daren T. Johnson for Plaintiff and Respondent.

VALLÉE, J.—Suit for declaratory relief as to the respective rights and duties of the parties under a policy of automobile liability insurance.

Paul Mardoc Motors, Inc., operated a used car business in Los Angeles. Paul Shipton was an officer of Mardoc and worked as a manager and buyer. At all times involved he was acting within the course and scope of his employment.

On September 28, 1955, Mardoc sold a 1950 Pontiac on a conditional sale contract to James Sullivan. Sullivan returned the car to Mardoc, stating he was unable to pay the installments. Mardoc took the car and placed it on its used car lot.

On March 1, 1956, plaintiff issued to Mardoc a policy of automobile liability insurance. On March 26, 1956, Mardoc sold a Buick to defendant Louis Coston. Coston returned the Buick to Mardoc for repair of the brakes. Shipton loaned the 1950 Pontiac to Coston while the Buick was being repaired. On April 23, 1956, the Pontiac struck defendant Brown, a pedestrian, and injured him.

There was a conflict in the evidence as to the identity of the driver of the Pontiac. At the time of the accident Coston told the police he was the driver. He was arrested at the scene of the accident for driving an automobile under the influence of narcotics. The Pontiac was impounded in a police garage. While in state prison for the offense for which he had been arrested, Coston testified he was not the driver, that the driver was a mechanic known to him by the nickname "Roughhouse." The true name of "Roughhouse" was "Plaza

Mogell.'' Coston testified that immediately after the accident ''Roughhouse'' fled the scene. George Hacker, who witnessed the accident, testified Coston was the driver. Edward Johnson, who also witnessed the accident, testified he saw a large man in white overalls flee from the Pontiac. ''Roughhouse'' died August 18, 1956. For ''about two or three months'' before he died, he was in failing health, requiring a neighbor to help him and to prepare his meals.

At the time of the accident Sullivan was the registered owner of the Pontiac. He received a letter from the authorities advising him the car was in the police garage. He took the letter to Shipton not later than May 1956. Shipton went to the garage and saw the car was damaged beyond repair. Shipton testified: ''Q. Did you make any attempt to find out whether there had been anyone injured in the accident? A. No. Q. You did not? A. No. It seemed to me if there had been anybody injured the police or somebody would have contacted me on it. I was not contacted by anyone at any time.''

On June 6, 1956, attorneys representing Brown sent a letter by registered mail to Sullivan advising him of the accident and claims arising out of Brown's injuries, and requested him to refer the matter to his insurance company. Within one or two days after receiving the letter, Sullivan delivered it to Shipton. Shipton did nothing about it. He did not report to plaintiff the fact that the car had been in an accident. The first knowledge plaintiff had of the accident was about the 6th or 7th of February, 1957, which was more than 9 months after the accident. At that time it received from Mardoc a copy of the summons and complaint in an action brought by Brown for damages for personal injuries.

The policy of insurance which was in effect at the time of the accident required plaintiff to defend any suit and to pay on behalf of the insured all sums which the insured became legally obligated to pay as damages because of bodily injury sustained by any person caused by accident. It gave plaintiff the right to make investigation, negotiation and settlement of any claim or suit. It contained these provisions:

''DEFINITION OF INSURED. With respect to the insurance under coverages A [bodily injury], B, and D, the unqualified word 'Insured' includes the named Insured and also includes . . . any person while using an automobile covered by this policy, and any person or organization legally responsible

for the use thereof, provided the actual use of the automobile is by the named Insured or with his permission.''

''NOTICE OF ACCIDENT. When an accident occurs written notice shall be given by or on behalf of the Insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.''

The court found: there was a complete failure by Mardoc to give written notice of the accident as required by the policy, and plaintiff has never received such written notice; there was no reasonable excuse for the failure to give notice of the accident to plaintiff; plaintiff was substantially prejudiced by Mardoc's failure to give plaintiff notice of the accident; no conduct of plaintiff constituted a waiver of notice.

Judgment was that plaintiff has no duty or obligation under its policy to defend or indemnify Louis Coston, Paul Mardoc Motors, Inc., or to pay Daniel Brown, defendants in this action, or to pay or satisfy any judgment which results from any claim or litigation made or instituted by any of said defendants with reference to the accident of April 23, 1956; none of the defendants has any right against plaintiff under or by virtue of the policy to any defense or indemnification or payment of any judgment which results from any claim or litigation made or instituted heretofore or hereafter by any of them with reference to the accident.

Defendant Brown, to be referred to as defendant, appeals. Mardoc and Coston did not appeal.

 Defendant's first point is that the evidence does not sustain the finding that plaintiff was substantially prejudiced by Mardoc's failure to notify it of the accident. He argues the failure of an insured to notify the insurer of an accident does not give rise to a presumption of prejudice, that in order to avoid responsibility under the policy prejudice must affirmatively appear from the facts and circumstances of the case. The question of waiver is not involved.

 It is settled in this state that failure to give the required notice is not fatal to an insured's claim unless the insurer has been prejudiced thereby. (*Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743, 752 [7 P.2d 999, 85 A.L.R. 13]; *Reed* v. *Pacific Indem. Co.*, 101 Cal.App.2d 151, 159 [225 P.2d 255].) The rule approved by the authorities in this

state is that the question of prejudice is one of fact for the trier of fact. "The ultimate conclusion in each case must depend on its own facts." (*Abrams* v. *American Fidelity & Cas. Co.*, 32 Cal.2d 233, 239 [195 P.2d 797]; *Gibson* v. *Colonial Ins. Co.*, 92 Cal.App.2d 33 [206 P.2d 387]; *Security Ins. Co.* v. *Snyder-Lynch Motors*, 183 Cal.App.2d 574, 580 [7 Cal. Rptr. 28].)

In *Artukovich* v. *St. Paul-Mercury Indem. Co.*, 150 Cal.App.2d 312 [310 P.2d 461], this court stated (p. 326):

"In the absence of waiver or estoppel it is well settled that if a liability policy makes compliance with a 'Notice of Injury, Claim or Suit' provision such as that in Industrial's policy a condition precedent to liability, no recovery can be had where the provision has not been complied with if prejudice to the insurer has resulted. [Citations.] There is no claim of waiver or estoppel.

"Whether an insured has complied with a 'Notice of Injury, Claim or Suit' is a question of fact. [Citation.] There is a presumption that prejudice occurred. The presumption is not a conclusive one. The burden of proving an excuse for a failure to give notice of suit, and to forward the complaint, process, and other suit papers to the insurer rests on the insured. [Citation.]"

"Prejudice is presumed from unreasonable delay in giving notice." (*Security Ins. Co.* v. *Snyder-Lynch Motors*, 183 Cal.App.2d 574, 581 [7 Cal.Rptr. 28].)

Plaintiff was obliged to defend any action covered by the policy when notified of an accident in the manner specified in the policy. Examination of the record discloses sufficient evidence to support the finding of the trial judge that plaintiff was prejudiced by the delay in receiving notice. George Hacker testified Coston was the only man in the Pontiac and that he (George Hacker) could have been reached at any time prior to March 13, 1958, at 1046 East 34 Street, Los Angeles. Coston testified "Roughhouse" drove the Pontiac. An inference from the testimony of Edward Johnson is that "Roughhouse" was driving it. "Roughhouse" died nearly four months after the accident and had been dead more than five months before plaintiff had notice of it. There was evidence that if plaintiff had had notice of the accident on the 8th or 9th of June 1956 rather than in February 1957 it would have conducted an investigation to ascertain the identity of the driver in order to determine whether the Pontiac was being operated with the consent and permission of the

insured; it would have taken a statement from the driver and interviewed witnesses; had it learned that "Roughhouse" was not in good health it would have undertaken to preserve his testimony. There was evidence two officers investigated the accident and there was a police report which would have been available to plaintiff for the purposes of investigation had it had reasonable notice of the accident.

As a result of the delay, plaintiff lost the testimony of "Roughhouse." Where the driver of an accident vehicle is one other than the named insured, the identity of the driver and the circumstances under which he came into possession of the vehicle are basic to the questions of imputed liability of the insured-owner and of coverage. Although defendant contends the policy was binding on plaintiff even if "Roughhouse" were the driver, the testimony of "Roughhouse" might have indicated he was driving the car without the consent or permission of Mardoc or of Coston. It may have influenced the determination of these questions favorably to plaintiff.

Further, as we have seen, prejudice is presumed from unreasonable delay in giving notice.

As said by counsel for plaintiff: "With the late notice, any investigation is along a cold trail, where evidence and witnesses are not to be found, or, if found, their quality has been diminished by the natural impediments of fading memory. The fruits of an early investigation may indicate no more than that the insurer is faced with a liability case that should be promptly settled before probable complications expose the insured to risk beyond his insurance coverage. Indeed, insurance companies have been adjudicated to be in bad faith if they do not exercise prompt and reasonable diligence to settle a claim within policy limits where there was a reasonable opportunity to do so." (*Davy* v. *Public National Ins. Co.*, 181 Cal.App.2d 387, 394-395 [5 Cal.Rptr. 488].)

Cases in which the trial court found from the evidence that the insurer had not been prejudiced are not in point.

We cannot say, as a matter of law, that the trial court was precluded from finding as a fact that plaintiff was prejudiced by the delay in giving notice. We hold that where, as at bar, there is a valid contractual agreement requiring notice and the trial court finds on sufficient evidence that a nine-month delay in notifying the insurer concerning an accident prejudiced it in defending the action against the insured

and its permittee arising out of the accident, such finding will not be disturbed on review.

Affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 24, 1962.