ST. PAUL FIRE AND MARINE INSUR-
ANCE COMPANY, a corporation,
Plaintiff,

v.

BANK OF STOCKTON, a corporation,
Defendant.

Civ. No. 8302.

United States District Court
N. D. California, N. D.

Nov. 20, 1962.

As Modified and Amended Jan. 11, 1963.

Bohnert, Davis & McCarthy, by Arthur M. Bohnert, Jr., San Francisco, Cal., for plaintiff.

Jacobs, Cavalero, Dietrich & Bray, by Mark S. Bray, Stockton, Cal., for defendant.

MacBRIDE, District Judge.

This action is for a Declaratory Judgment that plaintiff, St. Paul Fire and Marine Insurance Company (hereinafter called "Insurance Company") has no liability to defendant Bank of Stockton (hereinafter called "Bank") under the provisions of a so-called Blanket Bankers Bond on account of a forged signature to a Continuing Guarantee of an extension of credit wherein the bank sustained a loss.

Plaintiff Insurance Company issued to defendant Bank a so-called Blanket Bankers Bond providing in part as follows:

"(E) FORGERY AND ALTERATION OF SECURITIES, ETC.

"The undersigned agrees to indemnify the Insured to any amount not exceeding $50,000.00 from and against any loss sustained by the insured through having, in good faith, * * * given any value, extended any credit * * * on the faith of, or otherwise acted upon any * * * written instrument which proved to have been forged * * *.

"NOTICE AND PROOF OF LOSS.

"Within a reasonable time after learning of any occurrence or event which, in the judgment of the Insured, may give rise to a claim, the Insured shall notify the Underwriter thereof and subsequently submit proof of loss."

On September 18, 1959, one Stanley, a stranger to Bank, sought from Bank credit on automobile flooring contracts. Stanley's financial statement was insufficient to warrant the credit he requested, so he brought with him as a guarantor one A. Vela, another stranger to Bank,

whose financial statement was acceptable to Bank. (Exhibit E). A written form of Continuing Guarantee of $50,000.00 credit to Stanley was signed by Mr. Vela in the presence of Jack Tener, Manager of the Industrial Loan Department of Bank. Tener then gave the Guarantee to Vela with instructions that because of Mrs. Vela's community property interest in the Vela property she would also have to sign the Guarantee and that it should thereafter be returned to Bank in order to complete the transaction so that credit could be extended to Stanley.

On October 6, 1959, the document, purportedly bearing the signatures of both Mr. and Mrs. Vela, was returned to the bank by Stanley. (Exhibit A). Thereafter Bank commenced flooring Stanley's cars.

Stanley's operation was a poor one, and by May 5, 1960, Bank was sufficiently concerned to cause Tener to visit the Stanley garage in Jackson, California, where he observed that the garage was practically closed and. Stanley was out of business. Tener went across the street from the garage to the store of Mr. and Mrs. Vela and told them of their potential loss as guarantors. He advised them they should see an attorney. At this meeting Mrs. Vela asked for a copy of the document on which she was being charged. Tener agreed to send her a copy the following day which he did.

Immediately thereafter an exchange of letters was commenced between Mr. Vela, Bank and Mr. Vela's attorney. Where necessary these will be dealt with later in this Opinion. While the aforesaid correspondence was literally burning up the mails, Bank continued to discover additional losses resulting from the Stanley operation. The parties hereto have stipulated that the total losses to Bank from Stanley's operation exceeded $50,-000.00.

Plaintiff Insurance Company brought this action for Declaratory Relief claiming that although on July 26, 1960, Bank knew that Antoinette Vela was claiming her signature on the Guarantee to be a forgery, Bank did not notify Insurance

718

Company of either the claim of forgery or the actual forgery until January 16, 1961.[1] Insurance Company claims it was materially prejudiced by what it contends was an unreasonable delay in furnishing notice of the alleged forgery. It denies liability on the Bond because of Bank's failure to perform the notice requirements thereof. Because Bank is demanding payment on the bond, Insurance Company asserts that a dispute exists, and I find this to be the fact.

Bank claims it didn't realize that Mrs. Vela was denying her signature to the Continuing Guarantee until September 12, 1961, at which time the message finally "hit" Mr. Tener. In addition to its Answer, Bank filed a Cross Claim against Insurance Company wherein it restates the problem by asserting the existence of the bond and the $50,000.00 loss from the Stanley operations; it claims Mrs. Vela's signature was forged and, "That as a direct and proximate result of said forgery" Bank sustained a loss in excess of $50,000.00. It prays judgment against Insurance Company for the $50,-000.00. By its answer to the Cross Claim Insurance Company placed at issue all allegations of the Cross Claim.

Insurance Company contends that Bank has failed to prove the allegations of its Cross Claim wherein it contends that "as a direct and proximate result of said forgery" Bank sustained the claimed loss; that the issue of proximate cause was joined by Insurance Company's answer to the Cross Claim; and that Bank offered no evidence to show it would have been able to collect the amount of the loss from the Velas if there had been no forgery. Heidt v. Minor (1896), 113 Cal. 385, 45 P. 700; McAllister v. Clement (1888), 75 Cal. 182, 16 P. 775; and Ross v. New Amsterdam Casualty Company (1922), 156 Cal. App. 254, 205 P. 43, are cited by Insurance Company in support of this point.

Bank claims that it need only show there was a forgery and that because of the forgery it was unable to even make a claim for its loss against the Velas. Having shown that the Guarantee of the Velas was taken in good faith, Bank asserts it had no obligation to go behind the Guarantee to show the ability of the Velas to respond to the Bank's claim. Additionally, Bank argues that by raising the defense of proximate cause Insurance Company has, in effect, denied coverage under the terms of the bond and that having denied coverage it is not entitled to the presumption of prejudice which Bank admits Insurance Company might otherwise assert because of improper notice, citing Employers' Mutual Liability Company of Wisconsin v. Pacific Indemnity Company (1959), 167 Cal.App.2d 369, 334 P.2d 658; Walters v. American Insurance Company (1960), 185 Cal.App.2d 776, 8 Cal.Rptr. 665.

By raising the issue of proximate cause I do not believe Insurance Company has denied coverage. Rather, it is saying that it is unable to determine the amount of loss covered by the bond until Bank has shown how much it would have been able to collect from the Velas if there had been no forgery. Insurance Company, in effect, acknowledges that if, but for the forgery, Bank would have been able to collect the full amount of the loss from the Velas, then Insurance Company would be liable to Bank for the full amount of the loss. Such a position on the part of Insurance Company does not constitute a denial of coverage, and I find nothing else in the record which denies Insurance Company the right to assert the presumption of prejudice to which it is entitled if there is a finding of unreasonable notice. National Automobile and Casualty Company v. Brown (1961), 197 Cal.App.2d 605, 17 Cal.Rptr. 347. Additionally, I find that the loss sustained by Bank was a loss covered by

1. Bank admits that it did not connect the forgery claim to the coverage of the Blanket Bankers Bond provision mentioned herein until sometime in mid-January, 1961. The lack of identity of the coverage was agreed to be of no moment, and the action proceeded therefore upon the assumption that the Bank was fully aware of the provisions of Clause E.

Clause (E) of the Blanket Bond. (Exhibit 1).

■ Even though Insurance Company is not damaged by the defense of proximate cause, neither is it assisted by raising the issue in this case. There is no showing that Bank exercised other than due care in checking out the worth of the Velas at the time they were accepted as guarantors. The guarantee was taken in good faith even though the Bank was less than cautious when, after making the obtaining of Mrs. Vela's signature a condition precedent to the completion of the transaction, it accepted the Guarantee back from Stanley when Tener had entrusted it to Mr. Vela. This lack of caution is particularly notable in view of the fact that all three, that is, Mr. and Mrs. Vela and Stanley, were total strangers to Bank. This initial lack of caution, however, does not bear upon the issue of proximate cause at the time of loss, and neither the parties to this action or the Court should be required or permitted to speculate concerning how much could have been recovered from the Velas or what would have been the value of a judgment against the Velas if the forgery had not intervened. Innumerable factors could make a good judgment worthless or a valueless judgment collectible the day after either was obtained. There is nothing in the record to compel the Court to find other than that on the day the Guarantee was returned to the Bank it would have had a value of $50,000.00 except for the forgery. The Court will not go beyond the question of the originally assumed and accepted value of the Guarantee and I, therefore, find that Bank has sustained its burden of showing that because of the forgery it sustained a loss of $50,000.00.

The Notary Cases cited by Insurance Company are not applicable here. In those cases the forged document would have been valueless from the day it was signed even if the signature had been good. In the case before us, if Mrs. Vela's signature had not been forged the Guarantee would have had value on the day it was signed, and there is nothing in the record to indicate that the signature would not have had value on the day Bank asserted its claim against Insurance Company. By stipulation of the parties, defendant and cross claimant, Bank, was allowed to put on its case ahead of plaintiff's case. At the conclusion of cross claimant's presentation, Insurance Company moved for a "non-suit" which the Court will accept as a Motion for Dismissal made pursuant to Rule 41(b) and (c). Plaintiff's motion was based mainly on its claim that cross claimant had failed to establish the necessary causal relationship between the forgery and the loss to the bank. As stated above, I find that cross claimant has sustained the burden of establishing a proximate cause between the forgery and the bank's loss. The motion of Insurance Company for a dismissal of Bank's Cross Claim will, therefore, be denied.

Insurance Company contends that the knowledge that Mrs. Vela was denying her signature on the Guarantee was an "occurrence or event" about which Bank should have notified Insurance Company. Bank asserts that it had no obligation to notify Insurance Company until it had actual knowledge that the signature had, in fact, been forged, and that, in fact, it is relieved of obligation to notify even if diligence could have discovered the forgery, citing Pacific Coast Adjustment Bureau v. Indemnity Insurance Company of North America (1931), 115 Cal.App. 583, 2 P.2d 218. Further, Bank asserts that it had no obligation to notify because it had no more than a suspicion of the forgery, citing National Surety Company v. Western Pacific Railway Company, 9 Cir., 200 F. 675, and American Surety Company of New York v. Pauly (1898), 170 U.S. 133, 18 S.Ct. 563, 42 L.Ed. 977. I can not embrace Bank's position on this point. There is nothing ambiguous or uncertain about the notice provisions of the Blanket Bond. It requires that "*Any* occurrence or event" which in the judgment of Bank *might* give rise to a claim should be reported. I can't find that under the circumstances of this case Bank could have had only

a suspicion of the claim of forgery, and I do find that in view of all the circumstances there came a time in the chronology of events when the "claim of forgery" itself was an occurrence or event that should have been reported. Pacific Coast Adjustment Bureau v. Indemnity Insurance Company of North America, supra, cited by Bank is not in point. In that case the policy required that notice be given upon the *actual discovery* of a loss under the terms of the policy. In the case at bar we are only concerned with the discovery of any occurrence or event which *might* give rise to a claim, and as I have previously stated, I find the claim of forgery itself to be such an occurrence or event.

The bank was dealing with $50,000.00 for which it had a responsibility to its depositors. It was charged with the high standard of care required of traditionally prudent and careful lending officers of a bank. It was dealing with strangers to Bank which should have made it extremely cautious.

Bank knew it would most likely have a claim against the Velas when it advised them by letter on May 6, 1960, to consult their lawyer. (Exhibit O). And on June 1, 1960, it wrote them that it would make every possible effort to keep to a minimum their loss as guarantors. (Exhibit T).

The inference is strong that Tener was concerned regarding Mrs. Vela's signature in an inquiry to McCarthy of International Harvester when he made special note of Mrs. Vela's signature in his Credit Memo of May 13, 1960. (Exhibit 3).

Mr. DePaoli, attorney for the Velas, gave Bank its first warning when, on May 18, 1960, he advised that the Continuing Guarantee was revoked as to any further credit to Stanley and made reference in his letter to the signature of Mr. Vela and the *alleged* signature of Mrs. Vela. (Exhibit 4).

On July 25, 1960, Bank made its opening demand to the Velas on their Guarantee in the amount of $27,400.24. (Exhibit V). On July 26, 1960, evidently immediately upon receipt of the demand letter from Bank, Mr. Vela notified the bank in writing that "he (Stanley) had forged my wife's name and used the note." In the same letter, he made suggestions concerning the whereabouts of some of Stanley's assets and stated his rather poor opinion of Mr. Stanley which was not unexpected in view of the size of Bank's demand. He concluded this letter by suggesting, "If you will check this note (Guarantee) you will find that it is illegal from start to finish. Kindly let me hear from you." (Exhibit 7).

The claim of forgery was not being made by a stranger or by a third party whose assertion might raise nothing more than a suspicion, the charge was being made by a co-signer on a $50,000.00 Guarantee. The amount involved and the identity of the accuser qualified the charge for urgent and meticulous attention by Bank. It certainly would have alerted any insurer to the necessity for an immediate investigation.

Bank chose to ignore Vela's letter and made no effort to reply to him, but both Tener and Stephen Dietrich, Bank's attorney, admitted that on July 28, 1960, they were concerned with and actually discussed the possibility of forgery. Dietrich was sufficiently concerned that he advised Tener to get some exemplars of Mrs. Vela's signature. Roy C. Sanders, Vice President of Bank, admitted that he knew Mr. Vela was referring to the Continuing Guarantee in Vela's July 26th letter. (Exhibit 7). The August 3, 1960, letter to Tener from Western Land Title Company (Exhibit 24) wherein it is stated in part, "A check of the Deed of Trust covering the Vela realty was made and the trustors signatures are not on it"—indicates that both Dietrich and Tener wanted to examine some Vela signatures.

On August 11, 1960, Bank sued Mr. Vela alone in San Joaquin County asserting its claim under the Continuing Guarantee. (Exhibit 2). Bank admits that it didn't want to join Mrs. Vela as a defendant because venue would require the action be brought in Amador County;

that a jury would be requested; and that in view of Mr. Vela's contention of the forgery, Bank was fearful of local sentiment in favor of Mr. and Mrs. Vela. This reasoning on the part of Bank indicates all the more the serious concern of the Bank regarding the claim of forgery.

Finally, on August 11, 1960, Tener and Dietrich delivered the Summons and Complaint to the Sheriff of Amador County for service upon Mr. Vela. On that day the Sheriff told them that Mr. Vela was spreading it around the Jackson community that Stanley had forged Mrs. Vela's signature to the Continuing Guarantee. All of these individual events should have been enough to make Bank realize the claim of forgery was serious, and in view of these circumstances the Court can not find other than that the claim of forgery by Mr. Vela was an occurrence or event that the Bank should have reported to Insurance Company not later than August 12, 1960.

█ Because Bank didn't identify the loss with the forgery coverage of the Blanket Bond until early January, 1961, no test can be made as to whether the claim of forgery was an occurrence or event "which in the judgment of the insured might give rise to a claim." (Exhibit A). On August 11, Bank didn't know it had the coverage and, therefore, it exercised no judgment concerning the possibility of a claim on the bond. The Court must, therefore, inquire as to what a reasonably prudent bank would do if it had realized it had the coverage. Again, in view of all the circumstances and facts known to the Bank on August 11, 1960, I find that the degree of judgment and discretion chargeable to the Bank required that it should have given notice not later than August 12, 1960, and that it violated the terms of the Blanket Bond by failing to do so.

Bank asserts that even though notice was not given until January 16, 1961, and even conceding that such notice constituted a delay, the delay itself is an insufficient defense to Insurance Company for the reason that Insurance Company would first have to show that the delay was unreasonable, and in order to demonstrate it to be unreasonable Insurance Company must show prejudice and damage resulting from the delay which it failed to do. In support of this contention Bank cites Gibson v. Colonial Insurance Company (1949), 92 Cal.App. 2d 33, 206 P.2d 387, and Security Insurance Company v. Snyder-Lynch Motors (1960), 183 Cal.App.2d 574, 7 Cal.Rptr. 28. Additionally, Bank contends that the burden of showing prejudice from the delay is on the insurer and that any presumption of prejudice that might arise from a delay is a rebuttable presumption which can be overcome by the insured. Abrams v. American Fid. and Casualty Company (1948), 32 Cal.2d 233, 195 P.2d 797.

Insurance Company asserts that once there is a finding that a material requirement of the bonding contract has been violated, such as a failure to give notice pursuant to the terms of the contract, then the insured must be denied relief solely because of the violation and that there is no necessity of showing prejudice or damage, citing Los Angeles Athletic Club v. United States Fidelity and Guaranty Company (1919), 41 Cal.App. 439, 183 P. 174. In the alternative Insurance Company asserts that even if prejudice or damage to the insurer must be shown, then upon a showing of improper notice there is created a presumption of prejudice to Insurance Company arising out of the improper notice and that if the prejudice produced by the presumption is not overcome by the insured (Bank), Insurance Company must prevail, citing National Automobile and Casualty Insurance Company v. Brown (1961), 197 Cal. App.2d 605, 17 Cal.Rptr. 347, and Security Insurance Company v. Snyder-Lynch Motors (1960), 183 Cal.App.2d 574, 7 Cal.Rptr. 28. Insurance Company asserts Bank's failure to rebut the presumption.

As a second alternative, Insurance Company contends that in the case at bar it need not rely solely on the presumption of prejudice resulting from the

delay, nor can it be defeated by the rule of the Abrams case, supra, to the effect that the burden of showing prejudice is on the insurer. Insurance Company urges that the record reflects substantial prejudice over and above any that might be presumed.

I find ample prejudice to Insurance Company resulting from the delay to meet any of the tests of prejudice set forth in the principal cases cited by both Bank and Insurance Company in their briefs, i. e., National Automobile and Casualty Insurance Company v. Brown, supra; Security Insurance Company v. Snyder-Lynch Motors, supra; Reed v. Pacific Indemnity Company (1950), 101 Cal.App.2d 151, 225 P.2d 255; Gibson v. Colonial Insurance Company, supra; Abrams v. American Casualty Company, supra; and Artukovich v. St. Paul-Mercury Indemnity Company (1957), 150 Cal.App.2d 312, 310 P.2d 461.

There was a total delay of five months from August 12, 1960, the date the notice should have been given, to January 16, 1961, the date on which notice was actually given. The record reflects that Stanley died on September 8, 1961, without Insurance Company being given an opportunity to talk to him. Insurance Company was entitled to know of the circumstances under which Stanley obtained physical possession of the Guarantee from Mr. Vela before returning it to Tener. There is present the inference that Stanley forged Mrs. Vela's name, but possibly he didn't. If Insurance Company had been informed of the claim of forgery and of Stanley's illness, it could have taken steps to preserve his testimony. He might have been able to supply evidence to assist in identifying Mr. Vela himself, or some other person, as the forger. He might have been able to furnish proof that the purported signature of Mrs. Vela was on the document when he obtained it from Mr. Vela. Under such circumstances, Insurance Company might have had an opportunity to reduce its loss by a subrogated civil action for damages against the forger. Additionally, because plaintiff is in the bonding business it is interested in tracking down immediately a forger who might make them liable on other bonds or even liable again on the bond issued to Bank.

Insurance Company was given no opportunity to follow up on the leads contained in Mr. Vela's first letter of May 9, 1960, regarding the whereabouts of Stanley's money and assets. (Exhibit 8).

It is true that Bank looked upon the loss as its own because it didn't know it had the Blanket Bond. By liquidating those assets of Stanley which it was able to locate, it attempted to minimize what it thought was its own loss. But this fact does not assure that the Bank handled the pursuit of Stanley's assets and the pursuit of the forger in the manner that it would have if it had received the normally efficient investigative aid and assistance of Insurance Company once the latter had been notified that it faced a possible claim of $50,000.00.

Insurance Company was denied the right of prompt investigation and interview, not only of Stanley and his bookkeeper, but of other witnesses of varied worth who common experience in these matters dictates turn up in such investigations. A five month delay leaves a cold witness trial strewn with faulty memories, and as in the case at bar, dead or missing witnesses. Additionally, as pointed out in Purefoy v. Pacific Automobile Indemnity Exchange (1935), 5 Cal.2d 81, 53 P.2d 155, the delay itself prevents Insurance Company from showing additional prejudice. See also, National Automobile v. Brown, supra, and Security Insurance Company v. Snyder-Lynch, supra.

Denial to Insurance Company of the right to hot pursuit and immediate investigation constituted substantial prejudice to it. As soon as the facts showing prejudice were made a part of the record, it became Bank's burden to rebut the prejudice shown including the obligation to show that even if Stanley were still alive or even if other witnesses were produced they would not have been able to assist in minimizing Insurance Compa-

ny's loss or otherwise aid Insurance Company in tracking down the forger. Bank failed to sustain this burden.

■ The notice given to Insurance Company by Bank being unreasonably delayed, and material prejudice to Insurance Company having resulted from this lack of proper notice, I hereby find that plaintiff has no liability to defendant arising out of the herein referred to forgery of Mrs. Vela's signature. Judgment shall be entered in favor of plaintiff. Findings and a formal Judgment in conformity with views herein expressed shall be presented by counsel for plaintiff.