[Civ. No. 6434.   Third Appellate District.—March 28, 1941.]

OTIS J. BURBANK, as Administrator With the Will Annexed, etc., Respondent, v. NATIONAL CASUALTY COMPANY (a Corporation), Appellant.

Ray W. Hays and Wm. M. Miles for Appellant.

Joseph Barcroft, David Barcroft, C. Ray Robinson and Willard B. Treadwell for Respondent.

THE COURT.—The defendant, engaged in the liability insurance business, executed a policy in favor of J. M. McIntyre against liability imposed upon him by law on account of the operation of the automobile described in said policy. While driving the automobile McIntyre injured Julia J. Burbank. Julia J. Burbank and Willie Burbank, wife and husband, filed suit against McIntyre to recover damages for personal injuries.

The Burbanks recovered a judgment against McIntyre, which he failed to pay, and they then brought the suit now under consideration against the appellant to recover the amount of said judgment.

Since the commencement of the action, both of the Burbanks have died. Plaintiff now represents them.

The injuries mentioned above were received by Mrs. Burbank when her car and the car driven by McIntyre collided on *November 19, 1931*. On the 7th day of December, 1931, a criminal complaint was filed in a Justice's Court in Madera County, charging John Doe with reckless driving, and a warrant was issued under said complaint. McIntyre was arrested in Coalinga, Fresno County, on December 30, 1931. On the 13th day of January, 1932, he appeared in court and pleaded not guilty. Burbank subsequently filed suit and recovered damages against *McIntyre*. That judgment is final, and has not been paid. This suit was brought by the Burbanks against defendant insurance carrier. The lower court gave judgment in favor of plaintiffs for $5,000. When appealed to this court (15 Cal. App. (2d) 483 [59 Pac. (2d) 589]), the judgment was reversed upon the ground that the insured, McIntyre, had breached the terms of his policy by his failure to give notice of the accident within the time required therein. Prior to the retrial, which was had on July 12, 1939, plaintiffs moved the court for permission to withdraw from the stipulated facts upon which the first trial

was based. In *that* stipulation the parties agreed, in part, upon the following facts:

"That on the 18th day of February, 1932, J. M. McIntyre addressed a letter to the National Casualty Company, San Francisco, advising said company that he had an accident on the 19th day of November, 1931, near Berenda, California; that this was the first notice of said accident given by J. M. McIntyre to the National Casualty Company or any of its representatives; . . . "

Under such facts we held, on the former appeal, that such notice was not given within the time provided in the policy. The motion was granted, although opposed by defendant. Thereupon, the parties entered into a *second* stipulation of facts, which, together with oral testimony, exhibits, and the deposition of McIntyre, now constitutes the record before us. The *second* stipulation of facts omitted the following clause contained in the first: "that this was the first notice of said accident given by J. M. McIntyre to the National Casualty Company or any of its representatives." The stipulation includes a letter written by McIntyre to appellant, dated February 18, 1932, informing the latter that he had been in an accident on November 19, 1931. It also concludes with the following words: *"Do not know who this should be sent to so have sent a duplicate to issuing agent"* (not the Brown mentioned herein).

Upon a retrial by the court, the following findings were made:

"That the said J. M. McIntyre did not have any knowledge or notice of the accident of November 19, 1931, until December 31, 1931. That on December 31, 1931, the said J. M. McIntyre was arrested for reckless driving arising out of the accident of November 19, 1931. That said policy of insurance provided in part as follows: 'Failure to give any notice required to be given by this policy within the time specified shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time, and that notice was given as soon as was reasonably possible.' The court finds that it was not reasonably possible for J. M. McIntyre to have given notice sooner than it was given; and the court finds that said notice was given as soon as was reasonably possible. That at said time, to-wit, between December 31,

1931, and January 5, 1932, and prior and subsequent thereto, the said A. B. Brown was an agent and acting as such for and on behalf of the defendant, and thereafter actively prepared and investigated said cause for and in behalf of said defendant.''

Judgment was entered in favor of plaintiff in the sum of $7,235.17. This appeal is taken from such judgment.

■ It is first contended by appellant that the evidence is insufficient to support the above findings, in that it is shown, without contradiction, that the notice of injury was not given within the time required by the policy, nor is there any proof that it was not reasonably possible for the insured to have given such notice within such time. The portion of the policy involved here reads as follows:

''This insurance is subject to the following conditions and failure on the part of the Insured to comply therewith shall forfeit the right of the Insured or of any judgment creditor of said Insured to recover hereunder.

''1. Notice, Claims and Suits. The Insured shall give to the Company or to its authorized Agent immediate written notice of any accident covered hereby, and shall also give like notice of claims for damages on account of such accidents. Notice of accident or claim given by or on behalf of the Insured to any authorized Agent of the Company with particulars sufficient to identify the Insured shall be deemed to be notice to the Company. Failure to give any notice required to be given by this policy within the time specified shall not invalidate any claim made by the Insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time, and that notice was given as soon as was reasonably possible.''

It is conceded that the accident occurred November 19, 1931, and that only *written* notice of the same was mailed to appellant on February 18, 1932. December 30, 1931, McIntyre was arrested on a complaint charging him with reckless driving on November 19, 1931, and on January 13th, he pleaded not guilty to the charge. The evidence upon which the foregoing facts are based is not questioned. Such was the condition of the record upon the former appeal to this court. In the *present* record there is *additional evidence* in the testimony of McIntyre, the insured. He testified that he did not realize or know, at the time, that he had been involved

in the accident of November 19th, and that the first time he knew of the accident was when he was arrested on December 30th. We are satisfied that the finding in respect to the excuse for failure to give any notice of the accident prior to the last mentioned date has ample support in the evidence. The rule in this situation is found in Huddy's Encyclopedia of Automobile Law, volumes 13, 14, section 288, at page 358:

"Under a policy requiring immediate notice to the Insurer of accidents insured against, the condition does not apply to every trivial occurrence, even though it may prove afterward to result in serious injury. If no apparent harm came from the mishap and there was no reasonable ground for believing at the time that bodily injury would follow, there is no duty upon the insured to notify the insurer."

It is next contended that the former opinion of this court lays down the law of the case which must be followed here. But "when the judgment or determination is made upon a certain state of facts, it ceases to be of binding force if the facts presented at the retrial are essentially different." (2 Cal. Jur., p. 1044, sec. 621.) As indicated above, there was additional evidence produced at the second trial, bearing upon the question of whether or not the insured knew of the accident when it occurred. This was sufficient to preclude the application of the rule based upon the law of the case.

The findings of the court are indefinite as to the *time* of the giving of notice by McIntyre. In fact there is no specific finding to the effect that the assured gave *any* notice prior to the date of the written notice of February 18, 1932. However, there is evidence in the record from which the trial court might find that oral notice was given to Brown within the five days succeeding December 30, 1931. It is our duty to construe the findings in a manner which will support, rather than defeat the judgment. We therefore construe the finding to mean that the assured gave appellant the notice required by the policy between the dates mentioned.

It is our opinion that the evidence fails to support the finding that A. B. Brown was the agent, or was acting in behalf of appellant at the time the purported oral notice was given by McIntyre to him. The evidence not only fails to support the conclusion that Brown was an authorized agent of appellant within the meaning of the provisions of the policy, but it is wholly lacking in proof that Brown was

employed to act in *any capacity* on behalf of appellant during this five day period of time.

Brown's connection with the transaction is shown to be as follows: A. B. Brown was an independent insurance adjuster (residing at Fresno), and had always acted in this capacity in the investigation of claims for appellant insurance company. He had handled the investigation of a number of claims for appellant prior to his assignment in the present case. It was necessary, however, as is true in regard to all independent adjusters, that Brown receive a specific assignment of investigation as to a particular claim, in order to proceed with authority in behalf of appellant. Brown had received such assignment in the past from both the Los Angeles and San Francisco offices of appellant. A letter addressed to Mr. Brown, and dated February 29, 1932, directing him to proceed with the investigation of the accident of November 19, 1931, was introduced in evidence by the appellant for the purpose of fixing the time of his authorization for this particular case. This letter was sent from the Los Angeles office. The tenor of the letter discloses that this was the first communication between the Los Angeles office and Brown in regard to the McIntyre matter. The letter also assumes, as readily appears from the language used, that Brown was, up to the time of receipt of such letter, ignorant of such matter.

There are two incidents which are relied upon by respondents as proof of the agency of Brown between December 30th and January 5th. One is the testimony of the justice of the peace before whom the criminal charge of reckless driving was brought. It is as follows:

"Q. Is that notation given at the bottom of the letter dated January 14th, 1932, received by you from Raymond Cato to the effect that you were to notify A. B. Brown, 617 Brix Building, is that in your own handwriting? A. Yes, sir. Q. And do you recall when you made that notation on that letter? A. I can't say exactly. Q. By refreshing your recollection from the date of the letter or any other means there, can you refresh your recollection in that connection and give us the approximate date that the notation was made? A. I would say from my general practice that it was put on there approximately the date that the warrant was received. Q. What is your best recollection of the time that notation

was placed upon that letter received on January 14th, 1932? A. About the time I received this. That is my best recollection. Q. And was that January ·14th, 1932? A. Yes. Q. Now, do you recall the occasion of your making that notation? In other words, did Mr. Brown come to your office or phone you or write you or what? A. I recall that he telephoned. Q. Where from? A. Fresno.''

The second is the testimony of Brown with reference to the date when he had communicated with the attorneys for McIntyre. At the first trial said attorneys, Barcroft & Barcroft, agreed, by written stipulation; ''that *following the 29th day of February,* 1932, A. B. Brown, pursuant to instructions from the National Casualty Company and acting for them and in accordance with the reservations of rights agreement proceeded with the investigation of said accident; that said A. B. Brown ascertained that the law firm of Barcroft & Barcroft represented Mrs. Burbank and secured their consent to have the said Mrs. W. Burbank examined by Dr. F. L. R. Burks, of Fresno, which examination was made on or about the 30th day of June, 1932, and by Dr. D. H. Trowbridge, Fresno, which said examination was made on or about June 27, 1932.'' At the *first* trial, Brown testified that he had contacted the attorneys for McIntyre the latter part of January, 1932. On *this* trial, Brown testified that his previous testimony was erroneous, and that the correct month was *February,* which was subsequent to the time that written notice was given to appellant by the insured. The testimony of Brown at this trial is as follows:

''Now, I will ask you if at that trial you did not give the following answers to the following questions: 'Did you— however, you did, though, according to the stipulation, you contacted Barcroft and Barcroft and arranged for a medical examination of Mrs. Burbank?' That was asked by Mr. Hays, that question, and your answer is 'A. Yes, sir', and the question by Mr. Hays, 'That was somewhere in the latter part of January, 1932'. A. No. Q. Now, I will ask you, Mr. Brown, and claiming surprise, whether or not at the time stated previously, at the previous trial of this action, you did not give the following answers to those questions at that time and place—now, just a moment, if you at that time, in answer to that question, did not answer it as follows, or the question, rather, by Mr. Hays 'That was somewhere

in the latter part of January, 1932', and the reply, 'Yes, sir'. A. That is not my answer, and if it was it was a mistake. Q. Well, now, did you at that time give that testimony? A. No. Q. I will now ask you if this morning at approximately 10:30 in this courtroom when you were under oath when I asked you whether or not you did give that testimony at that time, if you did not at that time testify that you did so testify? A. This morning I said that, yes. Q. This morning you said that at the time this other trial took place that you testified that it was in the latter part of January, 1932, didn't you? A. Yes. Q. Now, I will ask you if at that trial you did not give the following answers to the following questions: 'Q. Did you—however you did, though, according to the stipulation, you contacted Barcroft and Barcroft and arranged for a medical examination of Mrs. Burbank'? That was asked by Mr. Hays, that question, and your answer is 'A. Yes, sir', and the question by Mr. Hays, 'That was somewhere in the latter part of January, 1932? A. Yes, sir'. Q. Did you give those answers to those questions at that time? A. Yes, sir. Q. When did you first receive the assignment in this case? A. On February the 29th. Q. And had you heard anything prior to that time, anything about this accident? A. Nothing whatsoever. Q. Had you ever seen Mr. McIntyre prior to that time? A. No. Q. When did you first see Mr. McIntyre? A. When he came into my office, which I believe was on March the fourth, but there is a matter of record on that date. Q. And do you recall whether or not you had communicated with Barcroft and Barcroft at all about this case prior to that time? A. I knew nothing about the case until I received that letter. Q. So you did not communicate with them? A. No. Q. And you had not then, arranged with them for a medical examination of Mrs. Burbank in the latter part of January? A. No. Q. And if it says in January in the transcript, that is an error, isn't it? A. Yes. Q. Then, why did you testify that you arranged with Barcroft in January of 1932? A. Well, that undoubtedly was a misunderstanding about the date. I could not have arranged to see him until I knew about the accident, but I did not know about it.''

While we are aware of the rule that agency may be proved by circumstantial evidence, and that the existence of an

agency is a question of fact for the trial court (1 Cal. Jur., p. 696, sec. 7), we believe that there is no substantial evidence in the record from which the trial court could conclude that Brown was the agent of appellant at the time when the assured testified he gave the oral notice of the accident, assuming that the requirement of written notice was waived. The two incidents mentioned were several weeks after the time when the oral notice was given. *No act of appellant is proven which would show, or tend to prove, that it communicated in any manner with Brown prior to February 18th, 1932, in respect to this accident.* "Agency is a fact, the burden of proving which rests upon the party affirming its existence." (2 C. J., p. 923, sec. 662.) We are of the opinion that plaintiff has failed to meet the requirements of the rule last stated.

As a result of the foregoing, the record shows that the first notice of the accident was given by the assured on February 18th. McIntyre, the assured, was excused from giving such notice until he *discovered* he had been in an accident. This was on December 30, 1932. Thus, some forty days elapsed until the notice was given. Section 551 of the Insurance Code provides as follows:

"Except in the case of life, marine, or fire insurance, notice of an accident, injury, or death may be given at any time within twenty days after the event, to the insurer under a policy against loss therefrom. In such a policy, no requirement of notice within a lesser period shall be valid."

Thus, the time which elapsed, before notice was given, exceeded by twenty days the time allowed by the statute. We are also of the opinion that, irrespective of the section quoted, the notice was not given immediately after the insured learned of the accident. The insured therefore breached the condition of the policy and could not recover. The reason for requiring prompt notice is well expressed in *Purefoy* v. *Pacific Auto. Indem. Exch.*, 5 Cal. (2d) 81 [53 Pac. (2d) 155], where it is said:

"But respondent argues with convincing force herein, that the lapse of time which removes the opportunity for prompt investigation, also destroys the possibility of showing prejudice arising from delayed inquiry. Where witnesses are interviewed after lapse of time, during which they either may have forgotten the facts, or been approached solely by

representatives of the injured party, it virtually becomes impossible to learn what facts, favorable to defendant, could have been ascertained through prompt inquiry. We are impelled to the conclusion that prejudice must be presumed in such situations."

The judgment is reversed.

Respondent's petition for a hearing by the Supreme Court was denied May 26, 1941. Gibson, C. J., and Shenk, J., voted for a hearing.