[Civ. No. 10464.   Third Dist.   Sept. 6, 1962.]

LEE WASSON et al., Plaintiffs and Respondents, v. ATLANTIC NATIONAL INSURANCE COMPANY, Defendant and Appellant.

Andrews & Stone and Robert K. Stone for Defendant and Appellant.

Raymond A. Leonard for Plaintiffs and Respondents.

PIERCE, J.—This is a controversy between two coinsurers, plaintiff Fireman's Fund Insurance Company and defendant Atlantic National Insurance Company, the former suing the latter for a pro rata contribution on account of a personal injury judgment paid by Fireman's Fund. Atlantic appeals from a judgment in plaintiffs' favor.

On April 29, 1957, a Mrs. Dell Hodge, leaving a store owned by Wasson (original plaintiff here), stepped on or tripped over a dolly owned and placed on the sidewalk by said Wasson to load packages being delivered to his store by a Western Auto Supply Company truck. Wasson, insured against public liability by Fireman's Fund, notified that insurer immediately. Atlantic, insurer of Western Auto Supply, was not then notified, because Western's truck driver at that time had no knowledge of the accident. Under the terms of Western's policy with Atlantic, Wasson was an "additional insured" if the accident arose during the unloading of the truck.

On April 24, 1958, Mrs. Hodge filed suit for her injuries, her complaint naming Wasson as defendant and also including Doe defendants. On May 29, 1958 (13 months after the accident), the attorney for Fireman's Fund prepared a letter which Wasson sent to Western notifying it of the facts of the accident and stating that he had been informed he was entitled to coverage by Atlantic. This information was immediately relayed to Atlantic. In June 1958 Mrs. Hodge filed an amended complaint, substituting Western for one of the fictitious defendants. On October 3, 1958, another demand was made that Atlantic undertake, in conjunction with Fireman's Fund, the defense of Wasson, and Fireman's Fund then tendered to Atlantic its entire investigation file. Atlantic responded that it would appear for Western but would not defend Wasson or pay any judgment recovered against him. Its grounds were (1) that it had received untimely notice, and (2) that the accident had not involved an unloading situation.

On January 9, 1959, Wasson filed this action against Atlantic for declaratory relief. At that time Wasson was the sole plaintiff. Atlantic's answer alleged that Fireman's Fund was the real party plaintiff. On April 16, 1959, by stipula-

tion, further prosecution of the action for declaratory relief was deferred until determination of the *Hodge* suit.

The *Hodge* action was tried and in December 1959 a judgment of $19,411.75 was entered against Wasson. Western was granted a nonsuit. Fireman's Fund paid the entire judgment without then demanding that Atlantic make a pro rata contribution. But on March 7, 1960, Fireman's Fund was joined as a party plaintiff to this suit, demanded pro rata contribution, and the case came to trial. The three issues presented in the trial court were: (1) whether an unloading operation had existed (making Wasson an additional insured under the Atlantic policy), (2) whether delay in notification of Atlantic relieved it from liability, and (3) whether Fireman's Fund had a right to contribution after having voluntarily satisfied the judgment. All three issues were decided in plaintiffs' favor.

The trial court found, and on appeal Atlantic no longer denies, that the accident occurred while the truck was being unloaded. Therefore, Wasson was an "additional insured" within the terms of the policy issued by Atlantic. And since it is conceded that Atlantic and Fireman's Fund were co-insurers and that each of said policies is of the pro rata type with respect to "other insurance," affirmance or reversal of the judgment will rest upon our determination of the issues relating to the timeliness of notice given and the effect of payment by Fireman's Fund of an amount of the judgment beyond its pro rata share.

With respect to the first question Atlantic asserts the rule that if a liability policy makes compliance with a provision for giving notice a condition precedent to liability, no recovery can be had where there is an unreasonable delay which results in prejudice to the insurer, unless the latter has waived compliance with such condition or is estopped to assert it. (*Abrams* v. *American Fidelity & Cas. Co.*, 32 Cal.2d 233 [195 P.2d 797].) There is a presumption that prejudice results from unreasonable delay. This presumption, however, is not conclusive. (*Artukovich* v. *St. Paul-Mercury Indem. Co.*, 150 Cal.App.2d 312 [310 P.2d 461].)

Contending that the delay was unreasonable, Atlantic urges that no excuse was given for the delay of 13 months in notification and that it was prejudiced in its inability to investigate the accident promptly or to negotiate an earlier offer of Mrs. Hodge to settle for $7,500.

But the delay was not unexplained. Wasson was unaware at the outset that he was an "additional insured" under the omnibus clause of Western's policy. Western knew nothing of the accident and apparently did not enter the picture at all either as an actual or potential defendant until approximately the spring of 1958. When Western did become involved, the existence of the policy provision was learned and notification of Atlantic was prompt.

The policy provision here was: "When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable." The policy form in evidence (Defendant's Ex. A) was a specimen and its blanks are not filled in. Undoubtedly, Western was the named insured. The provision for notice quoted above is not specific as to whether it is the obligation of the named insured only or also that of the "additional insured." If the former, notice was given by Western as soon as it could have done so. But even assuming that an obligation to give notice was also placed upon Wasson as the "additional insured" or upon Fireman's Fund as his representative, it cannot be said that a notice is untimely which is given as soon as the "additional insured" knows he enjoys that status or should know it by exercise of reasonable diligence. In a note in 18 American Law Reports 2d 470, it is stated:

". . . [S]ince the reasonableness of the time within which notice is to be given depends on the circumstances of each particular case, a compliance with the policy requirement as to notice . . . will be held to have been shown if a reasonable explanation for the delay is given. . . . [A]n accepted excuse restores the timeliness of notice . . . ."

It is settled law that delay or a failure to give notice is excused if the insured had no knowledge of the accident and could not have acquired such knowledge by the exercise of reasonable diligence. (5A Am. Jur., Automobile Insurance, § 153.) This rule has been applied in California where, although the insured had knowledge of the accident, it was apparently of such a trivial nature that there was no reasonable ground to believe that bodily injury would follow. (*Burbank* v. *National Casualty Co.*, 43 Cal.App.2d 773, 777 [111 P.2d 740].) *A fortiori* the same excuse must exist if, in the case of an "additional insured" he has no knowledge that he is included within the terms of a policy insuring a

named insured who, although present when an accident occurs, is not then identifiable as a party involved.

We cannot disturb the trial court's implied finding that neither Wasson nor Fireman's Fund acted unreasonably here. True, Fireman's Fund had learned, during its investigation that an unloading operation involving Western's truck had been in progress but this is not an item of intelligence calculated to prompt it to inquire into, and ascertain the type of coverage contained in, Western's policy of liability insurance. Facts ascertained in the investigation did not necessarily involve Western in the then unfiled lawsuit and, as a matter of fact, Western was not named in the original complaint. Moreover, when Western *was* brought in, the claim of negligence against it was dismissed by nonsuit. Certainly, it cannot be said as a matter of law that knowledge on the part of Fireman's Fund that a truck belonging to Western was being unloaded at the approximate time of the accident (but the operations of which were wholly outside the chain of causation of the accident) imposed upon Wasson a duty of examination of the truck owner's policy provisions.

In considering Atlantic's contention that it was prejudiced, its flat refusal, when it was notified, to tender a defense to Wasson must be kept in mind. From the evidence in the record the trial court was justified in concluding that Atlantic's decision *not* to defend was not affected in any way by absence of earlier notice of the accident. Where an insurance company denies its liability under a policy it has issued, it is ordinarily deemed to have waived any claim that the notice provision of the policy has not been complied with. (*Comunale* v. *Traders & General Ins. Co.,* 116 Cal.App.2d 198, 202, 203 [253 P.2d 495, 68 A.L.R.2d 883].) Atlantic now urges that it cannot be said here to have waived the notice provision because its denial of liability could have been predicated upon its inability to ascertain all the facts relevant to the question of whether the accident happened during unloading. When Atlantic made its decision not to defend, however, the investigation file of Fireman's Fund was open to it. (Atlantic had in fact evidenced an incuriosity about the accident over a period of four months.) There was ample evidence in that file to disclose the unloading operations; and there was also ample evidence before the trial court to justify its conclusion that postponement of notice had nothing to do with Atlantic's denial of liability. The rule of *Comunale, supra,* is therefore applicable.

■ The circumstances that Atlantic lost an opportunity to participate in determination of whether the earlier settlement offer of Mrs. Hodge should be accepted cannot be deemed prejudicial when considered with the position Atlantic took when it did come into the litigation regarding its obligations. Having denied all obligation to Wasson, it is unreasonable to suppose that Atlantic would have been willing to contribute substantially towards *any* settlement.

■ Atlantic further asserts that because both its policy and the policy of Fireman's Fund are of the pro rata type with respect to "other insurance" one coinsurer is not entitled to contribution from another coinsurer for any amount paid voluntarily beyond its own pro rata share.

It has been held that where two insurance companies insure the same risk as coinsurers neither can recover from the other any amount that it has paid in excess of its pro rata share of the entire loss sustained by the insured. (*Fidelity & Cas. Co.* v. *Fireman's Fund Indem. Co.,* 38 Cal.App.2d 1 [100 P.2d 364].) The applicability of the rule, however, is limited to those cases where the insurance company paying the judgment has been truly a "volunteer."

■ When Fireman's Fund paid the judgment here, the original parties to this action, Wasson and Atlantic, had already stipulated to defer its prosecution until final determination of the action brought by Mrs. Hodge and they had also agreed therein that the stipulation to defer "shall in no way impair or prejudice any of the rights, duties or obligations of either the plaintiff or the defendant insofar as the delay in proceeding to trial or making any additional motions occasioned by this Stipulation."

The reasoning of the trial court in connection with this stipulation as expressed in its findings was:

"That had said declaratory relief action been tried prior to the trial of the *Dell Hodge* suit, the duty of defendant, Atlantic National Insurance Company, to defend and pay the pro rata share of the judgment would have been defined and determined at the time of the trial of the *Hodge* action.

"That the purport of said stipulation was, among other things, to protect both parties against any such type of defense raised by defendant . . . after the trial of the *Hodge* action, to-wit: the defense that Fireman's Fund Insurance Company paid the entire judgment rather than a pro rata share.

"The determination in this action of the rights, duties and obligations of the parties under their respective contracts of insurance dates back to the date of the filing of this action.

"The Court further concludes that Lee Wasson had a legal right to pay said judgment and that the plaintiff, Fireman's Fund Insurance Company, was obligated to satisfy the legal requirement of Wasson to pay said judgment and was therefore subrogated under the terms of its policy to the rights of Wasson against the defendant, Atlantic National Insurance Company."

We hold that the court's reasoning is sound.

Atlantic argues that *Fidelity & Cas. Co.* v. *Fireman's Fund Indem. Co., supra,* is on all fours with the instant case. But in *Fidelity* no declaratory relief action was pending, prosecution of which was abated and absent which abatement the correlative rights of the two insurers could have been fixed before the judgment was paid. In *Fidelity* there had been an agreement between the insurers that a settlement of the original action would be without prejudice to any right which the settling insurer had against the coinsurer; but the question of whether this created an equitable right of subrogation (or effectually an equitable estoppel) was not discussed in the opinion and apparently was not even raised. " 'Cases are not authority for propositions not considered.' " (*People* v. *Banks,* 53 Cal.2d 370, 389 [1 Cal.Rptr. 669, 348 P.2d 102]; *In re Tartar,* 52 Cal.2d 250, 258 [339 P.2d 553].)

The principle of "equitable right of subrogation" is asserted in a recent decision of the California Supreme Court. In *Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455], plaintiff Continental sued two other insurers, General and Zurich, in declaratory relief for a determination of their respective liabilities as regards coverage of one Hiatt against whom a negligence judgment of $20,000 had been obtained. Both Zurich and General had refused to join with Continental in the defense of the action and both had denied liability. The trial court determined that Zurich had the primary liability to its policy limits and that Continental and General were liable for the balance on a pro rata basis, and that the costs of the defense should be shared by all three insurers on a pro rata basis (Continental having heretofore borne the entire burden). On the appeal that portion of the judgment which had provided for a sharing of the costs was attacked on the theory (supported by California authority) that where two insurers owe a defense to the same insured and where one denies liability and refuses a defense the other insurer, furnishing such defense, cannot require contribution. The Supreme Court (Justice Schauer

writing the opinion) rejected this rule. The opinion states on page 37:

"Under general principles of equitable subrogation, as well as pursuant to the rule of prime importance—that the policy is to be liberally construed to provide coverage to the insured—it is our view that all obligated carriers who have refused to defend should be required to share in costs . . . . A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus, by leaving the insured to his own resources, enjoys a chance that the costs of defense will be provided by some other insurer at no expense to the company which declines to carry out its contractual agreement. As commented in another context by the court in *Employers etc. Ins. Co.* v. *Pacific Indem. Co.* (1959) 167 Cal.App.2d 369, 381 [334 P.2d 658], quoting from *Massachusetts Bonding & Ins. Co.* v. *Car & Gen. Ins. Corp.* (1957) 152 F.Supp. 477, 482, 'there are . . . compelling reasons for allowing recovery when the other insurer has not entered the case at all or has refused to defend the insured against suit by the injured party . . . . [T]his view represents the current trend and better rule in the "volunteer" situations.' "

And on page 38 the court says: ". . . [N]o insurer which deliberately breaches its obligation to the insured should be permitted thereby to profit, whether at the expense of the insured, or of an insurer which faithfully discharges its obligation."

While the analogy of the facts in *Continental Casualty Co.* to the facts of the instant case is imperfect, its reasoning seems equally compelling. Atlantic had an obligation to join Fireman's Fund in the defense of the Hodge action and to share pro rata in the judgment. Its obligation could have been determined before Fireman's Fund was impelled to pay the entire *Hodge* judgment; that it was not so determined was because of Atlantic's deliberate act in causing the abatement of suit to determine its liability; an abatement which it had stipulated would be without prejudice to any of the rights of Wasson, or to its own duties and obligations.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.