[Civ. No. 22706.   First Dist., Div. One.   Apr. 19, 1966.]

HANOVER INSURANCE COMPANY, Plaintiff and Appellant, v. M. FRANK CARROLL et al., Defendants and Respondents.

Sedgwick, Detert, Moran & Arnold and George E. Sayre for Plaintiff and Appellant.

Sandell, Carter & Hill and Harold D. Sandell for Defendants and Respondents.

SIMS, J.—Plaintiff has appealed from an adverse judgment in an action in which it sought a declaration that its policy issued to the corporate defendant did not cover a claim of the individual defendant for damages for personal injuries allegedly suffered as the result of physical contact of a "hit-and-run" automobile with the automobile of his employer, the policyholder, which the employee was occupying at the time as an additional insured.

At the trial the evidence consisted of certain documents and the testimony of the claimant, the testimony of a claims supervisor of plaintiff, and, by deposition, the testimony of a highway patrol officer to whom the accident was reported and who conducted the only investigation that was made. At the request of the court the facts adduced were summarized in an agreed statement of facts. The findings of fact, which are a part of the judgment, set forth substantially all the matters in question.

They reflect that on May 12, 1962, while the policy, which contains "uninsured motorist coverage," was in force, the individual defendant while occupying the policyholder's, his employer's, automobile was involved in an accident, in which there was physical contact between that vehicle and an unidentified vehicle, from which he claims he suffered personal injuries; that on the same day and within 24 hours of the accident he reported it to the California Highway Patrol; that plaintiff was not notified of the accident or that said defendant had sustained injuries therefrom until January 16, 1963; and that on January 28, 1963, the plaintiff denied coverage because of lack of notice. The trial court further found that plaintiff was not prejudiced by the failure of defendant to notify it of the accident within the 30-day period specified in the insurance policy, and the applicable statutory requirements.

Plaintiff contends on this appeal (1) that no coverage ever arose in this case because compliance with the requirement of the 30-day notice is a necessary predicate of liability under the "hit-and-run automobile" provision of the "uninsured motor-

ist'' coverage; and (2) that, in any event, if the failure to give timely notice may be excused where there is no prejudice to the insurer, the facts herein establish prejudice as a matter of law.

*The delay in filing a statment under oath does not defeat recovery under the policy unless the insurer is prejudiced thereby*

The policy in question reads as follows:

"Insuring Agreements.

"I. Damages for Bodily Injury Caused by Uninsured Automobiles: To pay all sums which the insured or his legal representative shall be legally obligated to recover as damages . . . sustained by the insured, caused by accident and arising out of the ownership, maintenance, or use of such uninsured automobile. . . .

"II. Definitions:

"(a) . . . . . . . . . . . . . . . .

"(b) . . . . . . . . . . . . . . . .

"(c) Uninsured Automobile. The term 'uninsured automobile' means . . . (3) a hit-and-run automobile as defined; . . .

"(d) Hit-and-run Automobile. The term 'hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the automobile which the insured is occupying at the time of the accident provided (1) there cannot be ascertained the identity of either the operator or owner of such 'hit-and-run automobile'; (2) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, *and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident. . . .*" (Italics added.)

Since 1959 (Stats. 1959, ch. 817, § 1, p. 2835) this state has required that every policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall contain, unless waived in the manner provided by statute, provisions relating to coverage for damages caused by the operation of an uninsured motor vehicle, including therein a vehicle of which the owner or operator thereof is unknown. "The uninsured motorist cover-

age imposed by Insurance Code, section 11580.2 is California's response to the problem of the financially irresponsible motorist. (Comment, 48 Cal.L.R. 516.) By requiring all policies to contain uninsured motorist coverage (or an express waiver) the Legislature attempted to broaden the protection of innocent drivers against negligent and financially irresponsible motorists. (Report of Traffic Accident Consequences Subcommittee, Assembly Journal Appendix, Reg. Session, 1959, Vol. 3, pp. 14-15.)'' (*Inter-Insurance Exchange* v. *Lopez* (1965) 238 Cal.App.2d 441, 443 [47 Cal.Rptr. 834]; and in addition to sources cited see: *Mission Ins. Co.* v. *Brown* (1965) 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275]; *Travelers Indem. Co.* v. *Kowalski* (1965) 233 Cal.App.2d 607, 609 [43 Cal.Rptr. 843]; *Taylor* v. *Preferred Risk Mut. Ins. Co.* (1964) 225 Cal.App.2d 80, 82 [37 Cal.Rptr. 63]; *Hendricks* v. *Meritplan Ins. Co.* (1962) 205 Cal.App.2d 133, 136 [22 Cal.Rptr. 682]; Chadwick and Poche, *California's Uninsured Motorist Statute: Scope and Problems* (1961) 13 Hastings L.J. 194; Aguilar and Aguilar, *Uninsured Motorist Coverage* (1961) 36 State Bar J. 205.) As enacted there was no qualification or definition of a so-called ''hit-and-run'' vehicle, but in 1961 the statute was revised to read in part as follows: ''a. Required Policy Provisions or Endorsement. No policy of bodily injury liability insurance . . . shall be issued or delivered in this state to the owner or operator of a motor vehicle . . . unless the policy contains . . . a provision . . . insuring the insured or his legal representative for all sums within such limits which he shall be legally entitled to recover as damages for bodily injury from the owner or operator of an uninsured motor vehicle. . . .

''b. Definitions.—As used in (a) above . . . The term 'uninsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident or there is such applicable insurance or bond but the company writing the same denies coverage thereunder, or a motor vehicle used without the permission of the owner thereof if there is no bodily injury liability insurance or bond applicable at the time of the accident with respect to the owner or operator thereof, or the owner or operator thereof be unknown provided that with respect to 'uninsured motor vehicle' whose owner or operator is unknown: 1. The bodily injury has arisen out of physical contact of such automobile with the insured or

with an automobile which the insured is occupying; 2. The insured or someone in his behalf shall have reported the accident within 24 hours to the police department of the city where the accident occurred or if the accident occurred in unincorporated territory then either to the sheriff of the county where the accident occurred or the local headquarters of the Highway Patrol, *and have filed with the insurer within 30 days thereafter a statement under oath that the insured or his legal representative has a cause of action arising out of such accident for damages against a person or persons whose identity is unascertainable and set forth facts in support thereof.*'' (Italics added.) (Ins. Code, § 11580.2, as revised Stats. 1961., ch. 1189, § 2, p. 2921.) The effect of these amendments has been commented on as follows: ''The original law in 1959 did not specify any requirement for physical contact between vehicles. (Stats. 1959, ch. 817, § 1.) The law was amended in 1961, however, to impose three limitations on the coverage against a hit-and-run automobile: there must have been physical contact with the unknown vehicle, the accident must have been reported to the police within 24 hours, and a claim must have been filed with the insurer within 30 days. (Stats. 1961, ch. 1189, § 2.) These amendments, as the trial court noted, were designed to curb fraud, collusion, and other abuses arising from claims that phantom cars had caused accidents which, in fact, had resulted solely from the carelessness of the insured. For example, a driver who fell asleep and hit a telephone pole might claim he had swerved off the road to avoid being hit by an unidentified vehicle. The provision requiring physical contact with the unknown vehicle was added to the statute in order to eliminate such fictitious claims. (Chadwick, *California's Uninsured Motorist Statute,* 13 Hastings L.J. 194, 197-198.)'' (*Inter-Insurance Exchange* v. *Lopez, supra,* 238 Cal.App.2d 441, 443.) Physical contact and the report to the highway patrol are established, so inquiry here is limited to the single question of whether the passage of 30 days before a statement under oath is filed with the insurer will preclude consideration of the claim.

In *Lopez* the court held, ''that where an unknown vehicle has struck a second vehicle and caused it to strike the insured vehicle, there is physical contact between the unknown vehicle and the insured vehicle within the meaning of the uninsured motorist endorsement.'' (238 Cal.App.2d at p. 446.) In arriving at this conclusion the opinion recites: ''We are reinforced in this conclusion by considering the purpose of the

Insurance Code as a whole. Insurance Code, section 11580.2, is one facet of the entire financial responsibility law (*Interinsurance Exchange* v. *Ohio Casualty Ins. Co.*, 58 Cal.2d 142, 153 [23 Cal.Rptr. 592, 373 P.2d 640]) which is designed to protect persons injured on the highways through no fault of their own. (*Continental Casualty Co.* v. *Phoenix Construction Co.*, 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914]; Comment, 48 Cal.L.R. 516.) The requirements of physical contact and notice are intended to prevent frauds, not to lessen the coverage extended to innocent motorists. We believe the physical contact requirement, designed to prevent false claims, should not be extended to defeat recovery in cases where fraud clearly does not exist. (Aguilar, *Uninsured Motorist Coverage*, 36 State Bar J. 205, 207-208; Chadwick, *California Uninsured Motorist Statute*, 13 Hastings L.J. 194, 197-198.) As our Supreme Court has repeatedly stated: 'The pattern is clearly discernible; a desire on the part of the judiciary and the Legislature to not only prevent the astronomical accident toll in this state, but to also provide compensation for those injured through no fault of their own.' (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 154 [23 Cal.Rptr. 592, 373 P.2d 640].)'' (*Id.*, p. 446.)

Similarly, a liberal application of the legislative intent to provide compensation for those who are injured through use of the highways through no fault of their own, has led to a construction of the statute which categorizes an insured with less than the statutorily required amount of insurance as an uninsured motorist (*Taylor* v. *Preferred Risk Mut. Ins. Co.*, *supra*, 225 Cal.App.2d 80, 82), and to the extension of the protection of the statutory coverage to the territorial limits of the liability insurance of which it is made a part. (*Mission Ins. Co.* v. *Brown, supra*, 63 Cal.2d 508, 510.) The same considerations lead to a narrow construction of the provisions of the statute which permit waiver of the provision covering damage caused by an uninsured motor vehicle. (*Hendricks* v. *Meritplan Ins. Co.*, *supra*, 205 Cal.App.2d 133, 136-139.)

On the other hand, some of the statutory provisions and their policy counterparts have received a strictly literal construction. In *Travelers Indem. Co.* v. *Kowalski, supra*, the court was called upon to construe the provisions of paragraph ''(3)'' of subdivision ''(c)'' of the statute which excludes a claim for bodily injury if the insured, without the written consent of the insurer, compromises or prosecutes his claim to

judgment. The court recognized the beneficient purpose of the statute, and the rule of liberal construction, which has been noted above, but concluded: "Nevertheless, as was said in *Wisdom* v. *Eagle Star Ins. Co.*, 211 Cal.App.2d 602, 605 [27 Cal.Rptr. 599], this 'does not vitiate the elementary principle that the judicial function is simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted, or omit what has been inserted. (Code Civ. Proc., § 1858.) Courts cannot depart from the meaning of language in a statute which is free from ambiguity, even though the consequence would be to defeat the object of the statute. (*Anderson* v. *I. M. Jameson Corp.*, 7 Cal.2d 60, 68 [59 P.2d 962].)' We find no ambiguity in section 11580.2, subdivision (c)(3). Its language is perfectly clear. It declares with certainty that the insurance provided in the statute does not apply when the insured, without the written consent of the insurer, prosecutes to judgment any action against the uninsured motorist. There is no room for construction here. . . . We must and do construe the policy as well as the statute according to its unambiguous language, and when this is done it is clear that because respondent prosecuted his action to judgment against the uninsured motorist without the written consent of his insurer, he is denied the insurance protection established by the statute and described in his policy." (233 Cal.App.2d 607, 609-610.) A judgment for the insured predicated upon a finding that the insurer was not prejudiced by the insured's action in taking judgment against the uninsured motorist was reversed. (Cf. *Wasson* v. *Atlantic National Ins. Co.* (1962) 207 Cal.App.2d 464, 470 [24 Cal. Rptr. 665].) The same result has been reached where the insured effected a settlement with an insurer which had denied coverage of its own insured. (*Portillo* v. *Farmers Ins. Exchange* (1965) 238 Cal.App.2d 58, 60-61 [47 Cal.Rptr. 450].) Generally the "other insurance" provisions which relate to uninsured automobile coverage also have been narrowly construed (*Phoenix Assur. Co.* v. *Larsen* (1966) 240 Cal.App.2d 94, 96-98 [50 Cal.Rptr. 111]; *Kirby* v. *Ohio Cas. Ins. Co.* (1965) 232 Cal.App.2d 9, 12 [42 Cal.Rptr. 509]; *Grunfeld* v. *Pacific Auto. Ins. Co.* (1965) 232 Cal.App.2d 4, 6 and 8 [42 Cal.Rptr. 516]). Moreover, it is generally held that the one-year limitation contained in subdivision "(h)" of the statute will be strictly applied. (*Niagara Fire Ins. Co.* v. *Cole* (1965) 235 Cal.App.2d 40, 43-44 [44 Cal.Rptr. 889]; *Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d

333, 339-340 [43 Cal.Rptr. 476]; *State Farm etc. Ins. Co.* v. *Superior Court* (1965) 232 Cal.App.2d 808, 809-811 [43 Cal. Rptr. 209].)

The key to deciding which of the former categories of cases should determine the construction of the provision in question here is found in *Lopez* where the purpose of the 1961 revision is considered. If the provision is not strictly construed to preclude consideration of claim in all cases in which a statement under oath is not filed within 30 days, will fictitious claims and phantom-car frauds be encouraged? It would appear that the requirements of physical contact and prompt reporting to the designated law enforcement agency would tend to protect the insurer. There is no reason to believe that investigation 29 days after the accident would be more productive of discovery of the identity of the owner or the operator of the alleged offending vehicle than would such investigation 31 days after the event. The promptness of the claim is a matter of degree in any event, and a rule which permits the insurer to show actual prejudice should furnish it sufficient protection.

Support of this view is found in those cases which have reviewed general provisions of insurance policies which cover the necessity of furnishing notice or proof of loss. ''Where a policy of insurance provides for the giving of notice of claim 'as soon as practicable,' 'promptly,' 'immediately' or in similar language, failure to give, or delay in giving, the required notice is not fatal to recovery under the policy, unless the insurer has been prejudiced by such failure or delay. (*Abrams* v. *American Fidelity & Cas. Co.* (1948) 32 Cal.2d 233, 239 [195 P.2d 797]; *Security Ins. Co.* v. *Snyder-Lynch Motors* (1960) 183 Cal.App.2d 574, 580 [7 Cal.Rptr. 28]; *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 787 [8 Cal. Rptr. 665]; *Hall* v. *San Jose Abstract & Title Ins. Co.* (1959) 172 Cal.App.2d 421, 426-428 [342 P.2d 362]; *Employers etc. Ins. Co.* v. *Pacific Indem. Co.* (1959) 167 Cal.App.2d 369, 382 [334 P.2d 659]; *Artukovich* v. *St. Paul-Mercury Indem. Co.* (1959) 150 Cal.App.2d 312, 326 [310 P.2d 461]; *Reed* v. *Pacific Indem. Co.* (1950) 101 Cal.App.2d 151, 159-161 [225 P.2d 255]; *Gibson* v. *Colonial Ins. Co.* (1949) 92 Cal.App.2d 33, 34-37 [206 P.2d 387].) Where no prejudice results to the insurer, the above rule is applicable, even though compliance with the notice provisions is made a condition of the policy or specified as a condition precedent to the liability of the insurer. (See for example *Security Ins. Co.* v. *Snyder-Lynch Motors, supra; Walters* v. *American Ins. Co., supra; Hall* v. *San Jose Ab-*

*stract & Title Ins. Co., supra; Gibson v. Colonial Ins. Co., supra.*) Under the above authorities, provisions requiring notice 'as soon as practicable,' 'promptly' or 'immediately' have generally been construed in the language of the *Gibson* case, *supra*, 'as merely requiring notice which is prompt and reasonable under the circumstances. . . .' (92 Cal.App.2d at p. 36.) It is a question of fact whether an insured has failed to comply with the notice provisions of his policy and whether such failure has resulted in prejudice to the insurer. (*Reed* v. *Pacific Indem. Co.* (1950) 101 Cal.App.2d 151, 159 [225 P.2d 255].) Findings, supported by the evidence, that no prejudice is shown, will be upheld on appeal. (See for example *Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776, 787; *Employers etc. Ins. Co.* v. *Pacific Indem. Co., supra,* 167 Cal.App. 2d 369, 382.)'' (*Joyce* v. *United Ins. Co.* (1962) 202 Cal. App.2d 654, 662 [21 Cal.Rptr. 361] ; and see in addition to the cases therein cited: *National Auto & Cas. Ins. Co.* v. *Brown* (1961) 197 Cal.App.2d 605, 608-609 [17 Cal.Rptr. 347] ; *Wasson* v. *Atlantic National Ins. Co., supra,* 207 Cal.App.2d 464, 468; and *Dlazell* v. *Northwestern Mutual Ins. Co.* (1963) 218 Cal.App.2d 96, 103 [32 Cal.Rptr. 125].)

In *Wasson* the court noted: ''It is settled law that 'delay or a failure to give notice is excused if the insured had no knowledge of the accident and' could not have acquired such knowledge by the exercise of reasonable diligence. (5A Am. Jur., Automobile Insurance, § 153.) This rule has been applied in California where, although the insured had knowledge of the accident, it was apparently of such a trivial nature that there was no reasonable ground to believe that bodily injury would follow. (*Burbank* v. *National Casualty Co.,* 43 Cal.App. 2d 773, 777 [111 P.2d 740].) *A fortiori* the same excuse must exist if, in the case of an 'additional insured' he has no knowledge that he is included within the terms of a policy insuring a named insured who, although present when an accident occurs, is not then identifiable as a party involved.'' (207 Cal.App.2d at pp. 468-469.) So in the case of uninsured motor vehicle coverage, as herein, where the claimant is an additional insured, there may be considerable delay before the injured person discovers that the coverage is available. To strictly construe the notice provisions would give the insurer an opportunity to escape a liability which it had expressly taken. ■ It is concluded that the 30-day provision for filing a statement under oath cannot be asserted to defeat recovery under the policy unless there is prejudice to the insurer.

*The trial court's finding that the delay in notifying
plaintiff was not prejudicial is sustained by the evidence*

██ The agreed facts reflect that the claimant not only reported the accident to the highway patrol the same day, but that he also immediately reported it to his employer the following Monday, May 14; that thereafter and within a few days, at his employer's request, he secured a copy of the police report, a damage appraisal estimate showing the damage to the vehicle—agreed to be $425—and pictures of the vehicle in its damaged state. From the time of the accident until January 1963 when he first learned of the serious nature of his injuries, he was of the impression, and believed that his employer, which was self-insured for property damage, was also self-insured for liability to third parties, including uninsured motorist coverage; and that he did not learn of plaintiff's coverage until January 1963 when his employer advised him that a claim had been made against plaintiff and had been denied.

The agreed facts also refer to the testimony of plaintiff's claim supervisor as follows: "That she received notice of defendant Carroll's claim from Carroll's employer, Civil Service Employees Insurance Company, on January 16, 1963; . . . That no investigation of Carroll's claim had been made by the Hanover Insurance Company prior to that date because of lack of notice; and . . . That had notice been received, she would have requested investigation, the nature and extent of which is in dispute."

Plaintiff stresses the need for prompt notice and investigation of accidents where a "phantom" automobile is involved in order to prevent fraudulent claims, and to protect the insurer's right to have liability imposed on the responsible driver and his insurer, if insured, or its right of subrogation if that driver is in fact uninsured. It seeks to go beyond the agreed statement to the testimony of the claim supervisor, and requests this court to infer therefrom that a more complete investigation would have been made. The testimony reflects that an adjustor would have been employed, but leaves to conjecture the question of whether he would have done anything to supplement the passive investigation of the highway patrol which had received the claimant's contemporaneous report and inspected the damage. Her testimony leaves it uncertain as to whether the investigation would have included inspection of the scene of the accident, and in no way reflects that further and more timely investigation would have established

either the existence or nonexistence of the other vehicle, or, if the former, its identity and that of its driver.

The fact that the damage to the car was to the right rear corner tends to show it was inflicted by an outside instrumentality. The interest of the highway patrol in enforcing the laws respecting hit-and-run driving, and the interest of defendant employer in recovering the costs of repair of its automobile, suggest that if further investigation had been warranted from the information available it would have been made at that time.

On this evidence it cannot be said that there was prejudice as a matter of law, or that the trial court erred in finding that plaintiff was not prejudiced by the delay in furnishing notice of the loss.

The cases last referred to on the first question demonstrate that the issue of prejudice is one of fact. The statement found in many of the cases to the effect that the delay itself gives rise to a presumption that prejudice occurred (see *Dalzell* v. *Northwestern Mutual Ins. Co., supra,* 218 Cal.App.2d 96, 103 and earlier cases referred to in *Joyce* v. *United Ins. Co., supra,* 202 Cal.App.2d 654, 666) was expressly disapproved in *Campbell* v. *Allstate Ins. Co.* (1963) 60 Cal.2d 303 [32 Cal.Rptr. 827, 384 P.2d 155], wherein the court, after recognizing that "it has been held that prejudice must be shown with respect to breach of a notice clause" states: "The burden of proving that a breach of a cooperation clause resulted in prejudice is on the insurer. [Citations.] The only evidence introduced by defendant to show prejudice was the testimony of defendant's regional claim manager that a report by the insured is required to guard against false claims, verify that there has been an accident, and determine liability. Defendant had access to the police report and also knew the location of Hammer's automobile. This gave defendant sufficient opportunity to verify that there had been an accident. The facts indicate that plaintiffs were innocent of fault, that Hammer was negligent, and that defendant would have been liable on its policy even if Hammer had cooperated with it. The evidence is not sufficient to show prejudice and the finding that defendant was prejudiced is without support unless, as urged by defendant, a presumption of prejudice arises from a violation of the cooperation clause.

"In reaching its decision, the trial court properly determined that it was bound by *Margellini* v. *Pacific Auto. Ins. Co.,* 33 Cal.App.2d 93, 99-100 [91 P.2d 136], where

it was reasoned that prejudice 'must be presumed' as a matter of law from the breach of a cooperation clause by conduct similar to that involved here. We have concluded, however, that this reasoning is unsound and that Margellini should be disapproved. No statutory basis for the presumption of prejudice has been cited or found, and presumptions should not be created judicially unless there are compelling reasons for doing so. Although it may be difficult for an insurer to prove prejudice in some situations, it ordinarily would be at least as difficult for the injured person to prove a lack of prejudice, which involves proof of a negative. The presumption would not be in keeping with the public policy of this state to provide compensation for those negligently injured in automobile accidents through no fault of their own (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 153-154 [23 Cal.Rptr. 592, 373 P.2d 640] ; *Wildman* v. *Government Employees Ins. Co.*, 48 Cal.2d 31, 39 [307 P.2d 359]), and we are of the view that a judicially created presumption of prejudice, whether conclusive or rebuttable, is unwarranted (in accord : *Allen* v. *Cheatum, supra*, 351 Mich. 585 [88 N.W.2d 306, 311-312]).

"*Margellini* v. *Pacific Auto. Ins. Co.*, 33 Cal.App.2d 93 [91 P.2d 136], is disapproved insofar as it is inconsistent with the views we have expressed regarding the impropriety of a presumption of prejudice. Statements contrary to our views appearing in *Wasson* v. *Atlantic National Ins. Co.*, 207 Cal. App.2d 464, 467 [24 Cal.Rptr. 665], *National Auto. & Cas. Ins. Co.* v. *Brown*, 197 Cal.App.2d 605, 609-610 [17 Cal.Rptr. 347], *Security Ins. Co.* v. *Snyder-Lynch Motors, Inc.*, 183 Cal. App.2d 574, 581 [7 Cal.Rptr. 28], and *Gibson* v. *Colonial Ins. Co.*, 92 Cal.App.2d 33, 36 [206 P.2d 387], are also disapproved." (60 Cal.2d at pp. 306-307.) The cases last referred to all involve failure to comply with requirements of notice or proof of loss, and it must be assumed that *Campbell* places the burden of showing prejudice upon the insurer in such cases, as well as in the situation where there is alleged breach of the cooperation clause.

Considerations to the contrary have been noted in *Purefoy* v. *Pacific Auto. Indem. Exchange* (1935) 5 Cal.2d 81 [53 P.2d 155], wherein it was stated : "The insurer was deprived of an opportunity to make a prompt investigation while the facts were fresh in the minds of the parties and witnesses, and before physical marks and effects of the accident had been obliterated. As to certain breaches of condition it may more

readily be shown whether prejudice had resulted therefrom. But respondent argues with convincing force herein, that the lapse of time which removes the opportunity for prompt investigation, also destroys the possibility of showing prejudice arising from delayed inquiry. Where witnesses are interviewed after lapse of time, during which they either may have forgotten the facts, or been approached solely by representatives of the injured party, it virtually becomes impossible to learn what facts, favorable to defendant, could have been ascertained through prompt inquiry. We are impelled to the conclusion that prejudice must be presumed in such situations." (5 Cal.2d at p. 88; and see: *Burbank* v. *National Casualty Co.* (1941) 43 Cal.App.2d 773, 781-782 [111 P.2d 740]; *Burbank* v. *National Casualty Co.* (1936) 15 Cal.App. 2d 483, 486-487 [59 P.2d 589]; *Coolidge* v. *Standard Acc. Ins. Co.* (1931) 114 Cal.App. 716, 721-722 [300 P. 885]; *Los Angeles Athletic Club* v. *United States Fidelity etc. Co.* (1919) 41 Cal.App. 439, 446-447 [183 P. 174]; and *Aronson* v. *Frankfort etc. Ins. Co.* (1908) 9 Cal.App. 473, 476 [99 P. 537].) *Aronson* raises a further consideration, "If notified immediately, the defendant might have settled for a small sum if upon investigation it found that it was liable." (9 Cal.App. at p. 476.) If public policy dictates that those injured should be compensated it should not countenance an argument which precludes just compensation in those cases where the injurious consequences of the accident may be long in unfolding. *Purefoy, Coolidge, Aronson* and the *Burbank* cases, and other cases of similar vein, were expressly mentioned and limited in *Abrams* v. *American Fidelity & Cas. Co.* (1948) 32 Cal.2d 233 [195 P.2d 797] (see pp. 236 and 238), which made it clear that the rule of prejudice was applicable, and that any presumption or inference then recognized was not conclusive. This death knell to a finding of prejudice from the mere fact of delay presaged the interment which is found in the foregoing quoted passage from *Campbell* v. *Allstate Ins. Co.*

The explanation of the delay in furnishing the requisite notice or proof (see *Wasson* v. *Atlantic National Ins. Co., supra,* 207 Cal.App.2d 464, 468) does not necessarily or directly show lack of prejudice to the insurer. It does, however, tend to rebut any inference of fraud, concealment, or unfair dealing that might be drawn from the delay were it otherwise unexplained. ██ For this case it suffices to state that where the delay in filing a statement under oath is explained, and the evidence is conflicting as to whether or not

there was any actual prejudice to the insurer, the finding of the lower court that there was no prejudice will be upheld.

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1966.